# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re: | ) |
| | ) Case No. 1:25-10709 |
| Venus Capital Management Company | ) Chapter 15 |
| | ) |
| Debtor in a Foreign Proceeding.[1] | ) |
| | ) |
| In re: | ) |
| | ) Case No. 1:25-10710 |
| Venus India Structured Finance Master Limited | ) Chapter 15 |
| | ) |
| | ) |
| Debtor in a Foreign Proceeding. | ) |
| In re: | ) |
| | ) Case No. 1:25-10711 |
| Venus Master Fund | ) Chapter 15 |
| | ) |
| Debtor in a Foreign Proceeding. | ) |
| | ) |

## VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING AND FOR RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE

---

[1] The Mauritius Debtors in these cases along with the last four digits of each Mauritius Debtors' tax identification numbers are Venus Capital Management Company (5265), Venus India Structured Finance Master Limited (4244), and Venus Master Fund (6784).

82616465;1

# Table of Contents

I.     PRELIMINARY STATEMENT ................................................................. 1

II.    JURISDICTION AND VENUE ............................................................... 2

III.   BACKGROUND ...................................................................................... 3

    A.    The Mauritius Debtors' Incorporation.................................................. 3

    B.    The Mauritius Debtors' Corporate Structure...................................... 4

    C.    The Mauritius Debtors' Pre-Liquidation Businesses ......................... 4

    D.    Events Leading up to the Mauritius Debtors' Insolvency Proceedings ................. 6

    E.    Winding-Up Activities in Mauritius ................................................... 8

    F.    Mauritius Insolvency Law and the Mauritius Proceedings................. 11

        1.    Overview of Mauritius Insolvency Law ..................................... 11

        2.    Initiation of Mauritius Insolvency Proceedings........................ 12

        3.    General Provisions Regarding Mauritius Insolvency Proceedings........... 12

            a.    Administration ................................................................. 12

            b.    Liquidation.................................................................. 13

            c.    Mauritius Insolvency Proceedings are Collective Proceedings.... 15

            d.    Court Supervision ....................................................... 18

IV.   RELIEF REQUESTED............................................................................ 19

V.    BASIS FOR RELIEF ............................................................................. 20

    A.    Background and Purpose of Chapter 15 ............................................ 20

    B.    Requirements for Recognition .......................................................... 21

        1.    The Mauritius Liquidator Qualifies as a "Foreign Representative".......... 21

        2.    The Mauritius Proceedings each Qualify as a "Foreign Proceeding"....... 22

        3.    Nothing about Mauritius Law Should Discourage this Court from finding that the "Foreign Representative" and "Foreign Proceeding" Requirements have been Met ............................................................ 24

4.    The Mauritius Proceedings are Foreign Main Proceedings ...................... 26

a.    The COMI Presumption ................................................. 26

b.    Beyond the Presumption ............................................. 26

C.    The Mauritius Debtors' are Eligible Debtors under Chapter 15 of the Bankruptcy
Code ...................................................................................................... 30

VI.    ALTERNATIVELY, THE MAURITIUS PROCEEDINGS SHOULD BE
RECOGNIZED AS A FOREIGN NON-MAIN PROCEEDING .................................... 32

VII.    THE MAURITIUS PROCEEDINGS MEET THE TECHNICAL REQUIREMENTS
FOR RECOGNITION ................................................................................ 33

VIII.    RELIEF PURSUANT TO SECTION 1521 IS APPROPRIATE ..................................... 34

IX.    CONCLUSION .......................................................................................... 34

VERIFICATION OF PETITION ............................................................................... 36

82616465;1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*,
  737 F.3d 238 (2d Cir. 2013)....................................................................................30

*Grand Prix*, 2009 WL 1410519 .................................................................................27

*In re ABC Learning Centres Ltd.*,
  445 B.R. 318 (Bankr. D. Del. 2010) .......................................................................26

*In re Aerovias Nacionales de Colombia S.A.*,
  303 B.R. 1 (Bankr. S.D.N.Y. 2003)........................................................................31

*In re Al Zawawi*..........................................................................................................30

*In re Ashapura Minechem Ltd.*,
  480 B.R. 129 (Bankr. S.D.N.Y. 2012).....................................................................23

*In re Ashapura Minechem Ltd.*,
  No. 11-14668 (JMP) (Bankr. S.D.N.Y. Nov. 22, 2011) .........................................24

*In re B.C.I. Finances*,
  583 B.R. 288 (Bankr. S.D.N.Y. 2018).....................................................................31

*In re B.C.I. Finances PTY Ltd.*,
  Case No. 17-11266 (PB) (Bankr. S.D.N.Y. July 8, 2025) ......................................30

*In re Basis Yield Alpha Fund (Master)*,
  381 B.R. 37 (Bank. S.D.N.Y. 2008) ........................................................................25

*In re Bemarmara Consulting a.s.*,
  No. 13-13037 (Bankr. Del. Dec. 17, 2013)..............................................................30

*In re Betcorp Ltd.*,
  400 B.R. 266 (Bankr. D. Nev. 2009) .......................................................................23

*In re British Am. Ins. Co.*,
  425 B.R. 884 (Bankr. S.D. Fla. 2010)......................................................................27

*In re Cedenco Ohakune*,
  Case No. 11-30704 (Bankr. N.D. Cal. Mar. 29, 2011) ...........................................24

*In re Cenargo Int'l, PLC*,
  294 B.R. 571 (Bankr. S.D.N.Y. 2003) .....................................................................31

82616465;1

*In re Condor Ins. Ltd.*,
    601 F.3d 319 (5th Cir. 2012) ...........................................................................20, 25

*In re Cryptopia Ltd.*,
    Case No. 19-11688 (Bankr. S.D.N.Y. June 24, 2019) ...........................................24

*In re Fairfield Sentry Ltd.*,
    2011 WL 4357421 (S.D.N.Y. Sept. 16, 2011) .......................................................32

*In re Giftcraft Ltd.*,
    2025 Bankr. LEXIS 1350 (Bankr. S.D.N.Y. June 4, 2025) .........................26, 27, 29

*In re Gold & Honey, Ltd.*,
    410 B.R. 357 (Bankr. E.D.N.Y. 2009) ...................................................................24

*In re Inversora Eléctrica de Buenos Aires S.A.*,
    560 B.R. 650 (Bankr. S.D.N.Y. 2016) .....................................................................2

*In re Loy*,
    432 B.R. 551 (E.D. Va. 2010) ...............................................................................25

*In re McTague*,
    198 B.R. 428 (Bankr. W.D.N.Y. 1996) ..................................................................31

*In re Millennium Global Emerging Credit Master Fund Ltd*,
    458 B.R. 63 (Bankr. S.D.N.Y. 2011) .....................................................................27

*In re Modern Land (China) Co.*,
    641 B.R 768 (Bankr. S.D.N.Y. 2022) ..............................................................27, 28

*In re Montoux Ltd.*,
    Case No. 25-10043 (Bankr. D. Del. Feb. 19, 2025) ..............................................24

*In re Ocean Rig UDW Inc.*,
    570 B.R. 687 (Bankr. S.D.N.Y. 2017) ...................................................................28

*In re Sail City Apparel Ltd.*,
    Case No. 09-336607 (Bankr. D. N.J. Dec. 3, 2009) ..............................................25

*In re SPhinX, Ltd.*,
    351 B.R. 103 (Bankr. S.D.N.Y. 2006) ...................................................................27

*In re Suntech Power Holdings Co.*,
    520 B.R. 399 (Bankr. S.D.N.Y. 2014) ............................................................ passim

*In re Tradex Swiss AG*,
    384 B.R. 34 (Bankr. Mass. 2008) .........................................................................22

*In re Wikeley Family Trustee Ltd.*,
  Case No. 23-50420 (Bankr. E.D. Ky May 25, 2023)................................................................24

*In re Zetta Jet Pte Ltd.*
  [2018] ........................................................................................................................................28

*In the Matter of Air Mauritius Ltd.*
  (June 22, 2020) Order, U.K. High Court of Justice, Business and Property Court of England
  and Whales, Insolvency and Companies List ..........................................................................25

*Morning Mist Holdings Ltd. V. Krys (In re Fairfield Sentry Ltd.)*,
  714 F.3d 127 (2d Cir. 2013)...............................................................................................27, 28

*Talal Qais Abdulmunem Al Zawai v. Diss*,
  U.S. App. LEXIS 7955 (11th Cir. Apr. 3, 2024) ....................................................................30

**Statutes**

11 U.S.C. § 101 of the Bankruptcy Code ............................................................19, 21, 22, 23, 24

11 U.S.C. § 103 ...........................................................................................................................31

11 U.S.C. § 109(a) ...........................................................................................................30, 31, 32

11 U.S.C. § 362 ...........................................................................................................................19

11 U.S.C. § 1501 ......................................................................................................................2, 20

11 U.S.C. § 1502 .....................................................................................................19, 21, 26, 30, 32

11 U.S.C. § 1507 ...........................................................................................................................19

11 U.S.C. § 1508 .....................................................................................................................20, 25

11 U.S.C. § 1515 .................................................................................................................21, 31, 33

11 U.S.C. § 1516 ...........................................................................................................................26

11 U.S.C. § 1517 .................................................................................................................21, 26, 32

11 U.S.C. § 1520 .....................................................................................................................19, 34

11 U.S.C. § 1521 .....................................................................................................................19, 34

28 U.S.C. § 157 .............................................................................................................................3

28 U.S.C. § 1410 ...........................................................................................................................2

28 U.S.C. § 1334 ...........................................................................................................................2

82616465;1

**Rules**

Bankruptcy Rule 1007 ................................................................................................................33

Bankruptcy Rule 7007.1 .............................................................................................................33

**Other Authorities**

*Chapter 15 at Last*, 79 Am. Bankr.L.J. 713, 720 (2005) ...........................................................24

H.R. Rep. No. 109-31 (2005).......................................................................................................20

Article III of the United States Constitution ..................................................................................3

82616465;1

Bavesh Huns Biltoo (the "Foreign Representative," "Mauritius Liquidator," or "Huns Biltoo"), a United Kingdom qualified chartered accountant, registered Insolvency Practitioner in the Republic of Mauritius ("Mauritius"), and Partner of KPMG Mauritius ("KPMG"), in his capacity as the administrator of Venus Capital Management Company ("VCM") and liquidator of Venus India Structured Finance Master Limited ("Mauritius India Fund") and Venus Master Fund ("Mauritius Macro Fund," collectively with the Mauritius India Fund, the "Mauritius Funds") (collectively, the "Mauritius Debtors"), companies in insolvency proceedings (the "Mauritius Proceedings") in the Republic of Mauritius ("Mauritius") under the Mauritius Insolvency Act, 2009 (the "Mauritius Insolvency Act"), by its undersigned United States counsel, hereby respectfully submits the Official Form Petitions, this Verified Petition (together, the "Chapter 15 Petition"), the accompanying Declaration of Huns Biltoo executed on September 5, 2025 (the "Biltoo Decl."), the Declaration of Rajeshwar Bucktowonsing executed on September 4, 2025 (the "Bucktowonsing Decl."), for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"):

- recognizing the Mauritius Proceedings as foreign main proceedings under section 1517(b)(1) of the Bankruptcy Code or in the alternative as foreign nonmain proceedings under section 1517(b)(2) of the Bankruptcy Code; and

- recognizing the Mauritius Liquidator as the Debtors' foreign representative under sections 1509 and 1517 of the Bankruptcy Code;

- granting relief pursuant to sections 1507, 1520, and 1521 of the Bankruptcy Code; and

- granting such other and further relief as this Court deems necessary.

## I.   PRELIMINARY STATEMENT

1.    The purpose of chapter 15 of the Bankruptcy Code is to provide effective mechanisms for  dealing with cases of cross-border insolvency, with the express objectives of:

(a) cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; (b) greater legal certainty for trade and investment; (c) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, shareholders and other interested entities, including the debtor; (d) the protection and maximization of the debtor's assets; and (e) the facilitation of the rescue of financially troubled businesses. *See* 11 U.S.C. § 1501(a)(1)-(5); *see also In re Suntech Power Holdings Co.*, 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014).

2.       To that end, the Mauritius Liquidator requests recognition of the Mauritius Proceedings as foreign main proceedings primarily to obtain this Court's assistance in locating and obtaining the Mauritius Debtors' assets within the territorial jurisdiction of the United States and staying actions against the Mauritius Debtors.

## II.    JURISDICTION AND VENUE

3.       This Court has jurisdiction over this case under sections 1517 and 1334 of title 28 of the United States Code and section 1501 of the Bankruptcy Code.  This is a core proceeding under section 157(b)(2)(P) of title 28 of the United States Code.

4.       Venue is proper in this district pursuant to 28 U.S.C. § 1410(1) because the Mauritius Debtors have multiple bank accounts at Citizen's Bank in Providence, Rhode Island (the "Bank Accounts") and an ownership interest in a retainer on deposit in an Akerman LLP trust account in Rhode Island (the "Retainer Account").  *See* Biltoo Decl. ¶ 5.  The funds remain in the Bank Accounts and Retainer Account as of the date hereof and are the Mauritius Debtors' principal assets in the United States, providing a sufficient basis for jurisdiction and venue in Rhode Island. *See In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016) (holding that deposits in a New York bank account and an attorney retainer on deposit in New York "whether considered alone or together . . . provide a sufficient basis for jurisdiction and venue

82616465;1

in New York"); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 413-16 (Bankr. S.D.N.Y.
2014) (holding that a New York bank account over which a chapter 15 debtor possessed power to
direct disbursement of funds was property sufficient to establish venue for chapter 15 case in New
York).

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and the Court may
enter a final order consistent with Article III of the United States Constitution.

6.      The statutory bases for the relief requested are sections 105(a), 362, 1504, 1506,
1515, 1517, 1520 and 1521 of the Bankruptcy Code.

### III.    BACKGROUND

**A.      The Mauritius Debtors' Incorporation**

7.      On May 19, 2010, the late Vikas Mehrotra ("Mehrotra") originally incorporated
VCM originally as Sedna Investment Management Inc. under the Mauritius Companies Act 2001
(the "Mauritius Companies Act"). Biltoo Decl. ¶ 6.. A Certificate of Incorporation on Change of
Name was filed on January 29, 2014, changing the entity's name to Venus Capital Management
Company. *Id.* VCM was set up to act as a Collective Investment Scheme ("CIS") Manager under
Section 98 of the Mauritius Securities Act 2005. *Id.* VCM holds a Global Business License issued
by the Mauritius Financial Services Act of 2007 and operates pursuant to a Constitution adopted
on November 23, 2015. *Id.*

8.      The Mauritius India Fund was originally incorporated under the Mauritius
Companies Act as Sedna No. 1 Limited on January 24, 2013. Biltoo Decl. ¶ 7. A Certificate of
Incorporation on Change of Name was filed on June 25, 2014, changing the entity's name to VISFF
No.1 Ltd. *Id.* A Second Certificate of Incorporation on Change of Name was filed on September
5, 2022 changing the entity's name to Venus India Structured Finance Master Limited. *Id.* The
Mauritius India Fund operated pursuant to a Constitution adopted on November 23, 2015. *Id.*

9.      The Mauritius Macro Fund was incorporated under the Mauritius Companies Act on March 8, 2016 and operated pursuant to a Constitution adopted on January 18, 2016. Biltoo Decl. ¶ 8.

10.     Certified Copies of the Mauritius Debtors' Certificates of Incorporation and Incorporation on Change of Name are collectively attached to the Biltoo Decl. as Exhibit C.

**B.      The Mauritius Debtors' Corporate Structure**

11.     Mehrotra, a United States resident and citizen, with a long history of investing in Asia, specifically India, founded and owned 100% of VCM's shares.  Biltoo Decl. ¶ 10.

12.     As the sole holder of the management shares (voting, non-participating), VCM is the sole voting member of two funds incorporated in the British Virgin Islands ("BVI"), Venus Global Macro Fund, Ltd. ("BVI Macro Fund") and Venus India Structured Finance (Offshore) Fund Limited ("BVI India Fund," and collectively with BVI Macro Fund, the "BVI Debtors"). Biltoo Decl. ¶ 11.  The BVI Debtors operated as feeder funds in master-feeder-fund structures with the Mauritius Funds.  *Id.*  The Mauritius Macro Fund served as the master fund for the BVI Macro Fund; the Mauritius India Fund served as the master fund for the BVI India Fund.  *Id.*

13.     A corporate structure chart is attached to the Biltoo Decl. as Exhibit B (all persons and entities in the chart are collectively referred to as the "Venus Group").

**C.      The Mauritius Debtors' Pre-Liquidation Businesses**

14.     Mehrotra, through VCM as investment manager pursuant to investment management agreements (collectively, "IMA"), operated the Venus Group's investment activities. Biltoo Decl. ¶ 13.  VCM was incorporated in Mauritius to act as a CIS Manager for the BVI Debtors and Mauritius Funds.  *Id.*  At the date of the initiation of the Mauritius Proceedings, VCM had two directors, both Mauritius Residents.  *Id.*  Both directors were employed with Rogers Capital Corporate Services Limited ("Rogers Capital") in Mauritius.  *Id.*  Rogers Capital operated

as VCM's corporate service provider by offering management, administrator, and secretary services. *Id.*

15.    The Mauritius Macro Fund and the BVI Macro Fund were formed to make profits through investments in listed securities in India.  Biltoo Decl. ¶ 14.  Their objective was to target 20% rate of return with the following investment strategy: 60% in global equities, going long and short based on macro themes and fundamentals at micro-level; invest 20% in commodities, currencies, and interest rate instruments, using derivatives; and keep 20% in cash to meet margin calls.  *Id.*

16.    As opposed to focusing on listed securities, the Mauritius India Fund and the BVI India Fund provided a structure to invest in a non-banking financial company ("NBFC").  Biltoo Decl. ¶ 15.  The structure is a way investors could participate in the market for secured and unsecured lending to Indian companies, as well as companies conducting business in India and to their principal shareholders and promoters.  *Id.*

17.    The Mauritius Debtors' registered office is c/o Rogers Capital Corporate Services Limited, 3rd Floor Rogers House, No. 5 President John Kennedy Street, Port Louis, Mauritius.  Biltoo Decl. ¶ 16.

18.    Each of the Mauritius Debtor's books and records were kept and maintained by Rogers Capital in Mauritius.  Biltoo Decl. ¶ 17.

19.    The Mauritius Debtors' Constitutions each mandated that the directors hold board meetings in Mauritius and that any decision taken at a board meeting outside of Mauritius would be invalid and of no effect.  Biltoo Decl. ¶ 18.

20.     The Mauritius Debtors' key assets are the ownership interests in the Retainer Account and the bank accounts in the Mauritius Commercial Bank in Mauritius, Citizen's Bank in the United States, and various interests in NBFCs and Indian securities.  Biltoo Decl. ¶ 19.

**D.     Events Leading up to the Mauritius Debtors' Insolvency Proceedings**

21.     As the principal person responsible for the Venus Group's investments, Mehrota was obviously important to the Venus Group's success, and the BVI Debtors' PPMs reflected this by stating Mehrotra was a key person to the Venus Groups' investments and if he were to die or become otherwise disassociated with the Debtors, such an event could have a materially adverse effect on the Venus Group's investments.  Biltoo Decl. ¶ 20.

22.     Apparently unexpectedly, Mehrotra passed away on July 13, 2023.  Biltoo Decl. ¶ 21.

23.     And, as it turns out, Mehrotra was indeed a key person.  One of the key conditions of VCM's CIS Manager license was that VCM "shall at all times ensure that its officers and employees have appropriate level of training and knowledge of the products they promote or services they provide to enable them to explain the risks involved to client."  Biltoo Decl. ¶ 22; Without Mehrotra at the helm, VCM's remaining board of directors had no way to properly manage and make strategic decisions with respect to the funds' underlying products and services to ensure sustainability of the Mauritius Funds.  *Id.*  In their capacity as employees of Rogers Capital, the directors were responsible for specific fiduciary duties, and were not in full-time employment for conducting investment operations. *Id.*

24.     As a result of Mehrotra's loss, the external auditors qualified their opinions in June 2024, putting an emphasis of matter on the fact that " ..the directors have expressed serious doubts over the Company's ability to continue as a going concern ….accordingly the financial statements have been prepared on a break-up basis."  Biltoo Decl. ¶ 23.

25.     Accordingly, by mid-2024, VCM's directors and Rogers Capital, as VCM's Administrator, began inquiring about placing appropriate entities in the Venus Group into insolvency proceedings.  Biltoo Decl. ¶ 24.

26.     The documents governing the management of the Mauritius and BVI Debtors did not provide for business continuity or working principles following the loss of Mehrotra. Biltoo Decl. ¶ 25.  There are no known directions on steps to change the working principles in the event of the loss of a key person so that VCM or the Mauritius funds could continue to fulfill its purpose and secure the necessary streams of income to ensure the sustainability of the company via the key person's estate or otherwise.  *Id.*

27.     This led the directors and Rogers Capital to seek a legal opinion and the decision to put (i) the Mauritius Debtors into insolvency proceedings in Mauritius with Huns Biltoo as the administrator of VCM and the liquidator of the Mauritius Funds, and (ii) the BVI Debtors into insolvency proceedings in the BVI with Russell Crumpler and Christopher Farmer as joint liquidators:

- VCM consulted with and formally notified the Mauritius Financial Services Commission ("FSC") that VCM would likely dissolve and, consequently, could no longer operate as a CIS Manager.  The FSC had no objections.  *See* Biltoo Decl., **Exhibit D**.

- On June 27, 2024, the board of the Mauritius India Fund resolved that it was insolvent and should be wound up pursuant to Section 137.1 of the Mauritius Insolvency Act.

- On October 23, 2024, on behalf of VCM as the sole shareholder of the BVI Debtors, VCM's directors engaged Russell Crumpler and Christopher Farmer of Teneo (BVI) Limited to advise on options available in BVI to recover assets of the BVI Debtors and, if determined necessary, to act as the BVI Debtors' joint liquidators in BVI liquidation proceedings in conjunction with a soon-to-come insolvency proceeding in Mauritius for the Mauritius Debtors.

- On November 27, 2024, following confirmation that the FSC had no objections, VCM's directors appointed Huns Biltoo as Administrator of VCM by written resolution pursuant to Section 215(6)(a) of the Mauritius Insolvency Act (the "<u>Administration Resolution</u>").[2]

- And, as previously contemplated by VCM's shareholders, Huns Biltoo made arrangements to appoint the BVI Liquidators. Initially, the BVI Liquidators were retained in a discovery and due-diligence manner so that Biltoo could seek a legal opinion to ascertain his ability—as VCM's administrator—to vote the shares of the BVI Debtors. After Biltoo received this opinion, VCM executed the resolutions to place the BVI Debtors into liquidation.

- On December 20, 2024, upon an application by the Mauritius Liquidator, the Supreme Court of Mauritius (i) extended the convening period of the watershed meeting of VCM to 30 December 2025 and (ii) exempted Huns Biltoo in his capacity as administrator from personal liability in respect of payments which may become due under any agreement entered by VCM.

*See* Biltoo Decl. ¶ 26

### E.    Winding-Up Activities in Mauritius

28.     By the time the Mauritius Liquidator and the BVI Liquidators were appointed, the Venus Group was in a holding pattern. Biltoo Decl. ¶ 27. Since Mehrotra's death, the directors had made no relevant decisions other than administrative and compliance ones. *Id.* The Mauritius Macro Fund and the BVI Macro Fund had no unliquidated investments, only cash, creditor claims, and intercompany balances to reconcile. *Id.* The Mauritius India Fund and the BVI India Fund do have investments as well as cash, creditor claims, and intercompany balances to reconcile. *Id.*

29.     In short, the Mauritius Liquidator and the BVI Liquidators are cooperating to take control of their respective debtors' investments, cash, and other assets to distribute to the appropriate creditors and investors. Biltoo Decl. ¶ 28.

30.     The objective of the liquidation of the Mauritius Debtors is to realize their assets and distribute proceeds to their creditors and investors. Biltoo Decl. ¶ 29. The Mauritius

---

[2] Biltoo was also appointed as the liquidator of the Mauritius India Fund by written resolution of its sole voting shareholder dated June 27, 2024 and as liquidator of the Mauritius Macro Fund by written resolution of its sole voting shareholder dated December 3, 2024 (collectively with the Administration Resolution, the "<u>Liquidation Resolutions</u>"), collectively attached to the Biltoo Decl. as Exhibit A.

Liquidator shall work towards the orderly and efficient wind-down and eventually the dissolution of the Mauritius Funds. *Id.* In so far as VCM is concerned, the statutory objective of administration is to provide for the business, property and affairs of a company to be administered in a way that: (a) provides an opportunity for the company, or as much as possible of its business, to continue in existence; or (b) if it is not possible for the company or its business to continue in existence, results in a better return for the company's creditors and shareholders than would result from the immediate winding up of the company (section 213 of the Mauritius Insolvency Act). *Id.* Given that the Mauritius Funds and the BVI Debtors will in due course be liquidated and dissolved, so will VCM. *Id.* VCM is in administration temporarily to protect the voting shares in the BVI Debtors and VCM's claims under the IMA. *Id.*

31.   To this end, VCM's Mauritius directors and the Mauritius Liquidator have been working been diligently. Biltoo Decl. ¶ 30. As discussed above, on June 27, 2024, Rogers Capital, on behalf of VCM, applied to and received the FSC's consent to dissolve.[3] *Id.* Additionally, the Mauritius Liquidator did the following:

- providing notice to the Mauritius Revenue Authority, the Director of Insolvency, the office of the registered agent, all known stakeholders (creditors and contributories), professional advisors, the fund administrator and counterparties of the Mauritius Liquidator's appointment;

- advertising their appointment in two daily newspapers in Mauritius and Government Gazette;

- retaining counsel in Mauritius and the United States to seek chapter 15 recognition of the Mauritius Proceedings; and

- in the case of VCM, notifying creditors of, and holding, the first meeting of creditors.

*See id.*

---

[3] The FSC replied that it had no objection to VCM's dissolution and the removal of the company as a CIS Manager on January 20, 2025. The FSC formally stated that it had no objection to the winding up of the Mauritius Inda fund via email correspondence on July 18, 2024 and for the Mauritius Macro Fund via letter on January 20, 2025.

32.     Upon appointment, the Mauritius Liquidator contacted various relevant parties to (i) advise them of the liquidations; (ii) take control of any assets of the Mauritius Debtors; and (iii) request delivery of the Mauritius Debtors' books and records.  Biltoo Decl. ¶ 31.  The Mauritius Liquidator has taken control of the Mauritius Debtors' bank accounts in Mauritius and has reached out to Citizens Bank regarding the Bank Accounts held in the United States.  *Id.*  Additionally, the Mauritius Liquidator has received and is reviewing and categorizing thousands documents.  *Id.* The Mauritius Liquidator has received books and records from the Mauritius Debtors' administrator and registered agent.  *Id.*

33.     No stakeholder has objected to the Mauritius Proceedings or the Mauritius Liquidator's appointment.  Biltoo Decl. ¶ 32.  Indeed, stakeholders have consistently consented to and participated in the Mauritius Proceedings.  *Id.*

34.     The Mauritius Liquidator has received multiple proofs of debt.  Biltoo Decl. ¶ 33. The Mauritius Debtors' creditors are in several jurisdictions, including Mauritius, India, BVI, and the United States.  *Id.*

35.     The Mauritius Liquidator has overseen and generally directed all activities related to the Mauritius Debtors from Mauritius. *See generally* Biltoo Decl. ¶ 34. A significant portion of the work to date relating to the Mauritius Proceedings has been conducted in Mauritius, and all the work is supervised by the Mauritius Liquidator, all of which is ultimately subject to the supervision of the Mauritius Court.  *Id.*

36.     The Mauritius Liquidator, on behalf of the Mauritius Debtors, understands and concedes that the BVI Liquidators have complete control over the BVI Debtors and has cooperated with the BVI Liquidators.  Biltoo Decl. ¶ 35.

37.     The Mauritius Debtors and the BVI Debtors have bank accounts at Citizens Bank in Providence, Rhode Island.  Biltoo Decl. ¶ 36.  The primary purposes of these Chapter 15 Cases are to stay all actions against the Mauritius Debtors and to control their Bank Accounts.  *Id.*

**F.     Mauritius Insolvency Law and the Mauritius Proceedings**

      **1.     Overview of Mauritius Insolvency Law**

38.     In Mauritius, the primary legal framework regulating insolvency proceedings is the Mauritius Insolvency Act.  Bucktowonsing Decl. ¶ 10.  It is complemented by the Mauritius Companies Act, along with regulations established under the Mauritius Companies Act  and legal precedents.  *Id.*  Both the Mauritius Insolvency Act and the Mauritius Companies Act are modelled after the equivalent legislation in New Zealand.  *Id.*  The insolvency law basically encompasses (i) bankruptcy for individuals, and (ii) voluntary or court liquidation, voluntary administration, and receivership for companies.  *Id.*

39.     The role of the Supreme Court (Commercial Division) is a significant one, in particular in giving directions to insolvency practitioners and approving a receiver's or liquidator's remuneration, fees, expenses generally controlling the process. Bucktowonsing Decl. ¶ 11.  The Court deals with cases involving insolvency on a daily basis and often renders judgments which are upheld on appeal.  *Id.*

40.     The Mauritian insolvency legislation is mostly creditor-friendly without however denying access to justice/judicial intervention to debtors.  Bucktowonsing Decl. ¶ 12.  In light of Mauritius' position as an international financial center, the role of creditors (predominantly based in foreign jurisdictions), has played an important role in the development and policy of Mauritius' insolvency law.  *Id.*  In that context, the provisions dealing with Cross-Border Insolvency contained in the Insolvency Act 2009 was proclaimed in July 2019 enacting the rules governing cross-border insolvency in Mauritius based mainly on the United Nations Commission on

International Trade Law ("UNCITRAL") Model Law on Cross-Border Insolvency (the "Model Law").  *Id.*

## 2.    Initiation of Mauritius Insolvency Proceedings

41.    The Mauritius Insolvency Act deals with the insolvency of individuals and companies and the distribution of assets in insolvency and related matters.  Bucktowonsing Decl. ¶ 16.

42.    An administrator may be appointed by a company, the company's liquidator (if it is in liquidation), a provisional liquidator, a secured creditor holding a charge over the whole or substantially the whole of the company's property or the Court. Section 215(6)(a) of the Mauritius Insolvency Act.  Bucktowonsing Decl. ¶ 17.

43.    A company appointment must be in writing and may only take place if the directors have resolved that, in their opinion, the company is, or is likely to become, insolvent, and that an administrator should be appointed.  Bucktowonsing Decl. ¶ 18.

## 3.    General Provisions Regarding Mauritius Insolvency Proceedings

### a.    Administration

44.    The act of appointing the Administrator itself commences the administration and there is no separate requirement for an order or decision of the Mauritian courts to commence the Mauritian Proceedings. Bucktowonsing Decl. ¶ 20.  The process of administration ends where:

(a)    a deed of company arrangement (the **"DOCA"**) is executed by the company and the deed administrator;

(b)    the company's creditors resolve that the administration should end;

(c)    the company's creditors appoint a liquidator by resolution passed at a watershed meeting; or

(d)    any of the events referred to in paragraphs (i) – (vi) below occurs:

i.      the Court (meaning the Bankruptcy Division of the Supreme Court of Mauritius) orders that the administration end because it is satisfied that the company is solvent, or for any other sufficient reason;

ii.     the period of 28 days (or longer if extended by the Court) after the administrator is appointed (the "convening period") expires without a watershed meeting having been called or an application having been made to Court to extend that period;

iii.    the Court dismisses an application to extend the convening period which has expired after the application for extension was made;

iv.    watershed meeting ends without a resolution that the company execute a DOCA;

v.     the company fails to execute a DOCA within 21 days after the watershed meeting has approved it (or such longer period allowed by the Court); or

vi.    the Court appoints a liquidator or an interim liquidator.  Section 214(3) Mauritius Insolvency Act.

*Id.*

45.     The entry into administration results in the directors remaining in office but being unable to act as officers of the company without the prior written approval of the administrator. Bucktowonsing Decl. ¶ 21.  Except for payments out of the company's account made in good faith in the ordinary course of banking business and at a time before a bank is notified of the appointment of an administrator, transactions or dealings by the company in administration are void unless they are entered into by the administrator on behalf of the company, with his written consent or under a Court order. Sections 224, 226 of the Mauritius Insolvency Act.  *Id.*

**b.     Liquidation**

46.     Under Section 100 of the Mauritius Insolvency Act a company in Mauritius may be liquidated through three main routes, by: (i) order of the Supreme Court, voluntary resolution

of shareholders or creditors, or a resolution passed at a watershed meeting.  Bucktowonsing Decl. ¶ 22.

47.     Where, as here, the company is insolvent, liquidation generally proceeds through a creditors' voluntary winding up (Section 100 (2)(a)).  Bucktowonsing Decl. ¶ 24.  The directors must first declare insolvency and call meetings of shareholders and creditors. Creditors have the right to nominate the liquidator, form a committee of inspection, and oversee the process. *Id.*  The winding up continues until the company's affairs are fully resolved, after which the liquidator prepares final accounts, calls a closing meeting, and files notice of dissolution.  *Id.*

48.     Alternatively, liquidation may be ordered by the Court on the petition of the company itself, its shareholders, creditors, or regulatory bodies (Section 102 (1)).  Bucktowonsing Decl. ¶ 25.  Grounds include inability to pay debts, which may be evidenced by failure to comply with a statutory demand. *Id.*  Once a winding up order is made, the Official Receiver or a Court-appointed liquidator assumes control of the company's assets and operations, while directors' powers cease.  *Id.*  Legal proceedings against the company are stayed unless the Court permits otherwise. *Id.*

49.     The liquidator plays a central role in all forms of winding up.  Bucktowonsing Decl. ¶ 26.  His duties include taking control of the company's assets, realizing them, distributing proceeds to creditors, and reporting any misconduct or offences.  *Id.*  Creditors must prove their debts by submitting formal claims to participate in distributions.  *Id.*  The process ends with the dissolution of the company once all matters are settled and statutory filings completed.  *Id.*

50.     When a company is placed into liquidation, the appointed liquidator is responsible for realizing the company's property and distributing the proceeds.  Bucktowonsing Decl. ¶ 27.  The law requires that preferential claims, as listed in the Fourth Schedule of the Mauritius

Insolvency Act (the "Fourth Schedule"), are settled first and in the order of priority prescribed. Once these have been paid, any remaining funds are distributed among the general creditors. *Id.*

51.     If, after payment of all creditors, there are surplus assets, these are distributed to the company's shareholders. Bucktowonsing Decl. ¶ 28. The distribution is made either in accordance with the company's constitution, if it contains provisions to that effect, or, in the absence of such provisions, the assets are divided ratably among the shareholders. This ensures that creditors are satisfied before any return is made to shareholders. *Id.*

### c.     Mauritius Insolvency Proceedings are Collective Proceedings

52.     VCM is currently in an administration proceeding. Bucktowonsing Decl. ¶ 29. In this type of a proceeding, an administrator appointed over a company has control of the business, affairs and property and investigates and considers ways of salvaging the business or preserving the business for an eventual liquidation for the benefit of all of the company's stakeholders as a whole – being all of its creditors, shareholders, and employees. VCM's insolvency proceeding is no exception:

(a)     The objective of the voluntary administration procedure is to ensure the continuation of VCM's business as a going concern to yield a better return to the company's stakeholders than would result from an immediate winding up. Section 213 of the Mauritius Insolvency Act.

(b)     An administrator may carry on the company's business and manage its property and affairs with the objective of salvaging protecting its business in the interests of the company's stakeholders. Section 222(1)(c) of the Mauritius Insolvency Act.

(c)     An administrator is required to investigate the company's affairs and consider possible ways of salvaging its business in the interests of creditors, employees, and shareholders. Section 222(1)(b) of the Mauritius Insolvency Act.

(d)     In the case of VCM, the Mauritius Liquidator is currently acting as an administrator to preserve the company's assets, but will eventually liquidate VCM.

(e) Any of the company's creditors or shareholders may apply to the court if the administrator appointed manages the company's property or affairs so as to prejudice the interests of some or all of the company's creditors or shareholders. Section 283 of the Mauritius Insolvency Act.

(f) A key effect of administration, however, is the operation of a moratorium. Unless the administrator consents in writing or the Mauritian Court gives permission:

  i. no person can enforce a charge over the property of the company;

  ii. an owner or lessor cannot take possession of or otherwise recover property that was used or occupied by, or is in the possession of, the company; and

  iii. proceedings in a court shall not be commenced or continued against the company. Sections 242 – 244 of the Mauritius Insolvency Act.

(g) The administrator must call the following meetings of creditors:

  i. The first creditors' meeting for considering whether the administrator should be replaced and whether to appoint a committee of creditors. In the case of the Company, the first creditors' meeting was held on 04 May 2020 and no replacement administrator was proposed by the creditors;

  ii. A watershed meeting, at which one of the exit routes from administration has to be voted upon; and

  iii. Such other creditors' meetings as may be required by the creditors' committee or the administrator. Section 232 of the Mauritius Insolvency Act.

*Id.*

53. The Mauritius Funds are in liquidation or winding-up proceedings. Bucktowonsing Decl. ¶ 30. A liquidator plays a central role in all forms of winding up. His or her duties include taking control of the company's assets, realizing them, distributing proceeds to creditors, and reporting any misconduct or offences. *Id.* Creditors must prove their debts by submitting formal

82616465;1

claims to participate in distributions.   A moratorium applies and the process ends with the dissolution of the company once all matters are settled and statutory filings completed.   *Id.*

54.    The law requires that preferential claims, as listed in the Fourth Schedule of the Mauritius Insolvency Act, are settled first and in the order of priority prescribed. Bucktowonsing Decl. ¶ 27.   Once these have been paid, any remaining funds are distributed among the general creditors on a *pari passu* basis.   *Id.*   If there are further surplus assets, they are distributed to the company's shareholders also on a *pari passu* basis.   *Id.*

55.    A liquidation proceeding, whether voluntary liquidation or a winding up commenced by a Mauritius court, is also a collective proceeding:

(a)    Section 154(1) of the Mauritius Insolvency Act: with effect from the commencement of the liquidation of a company:

i.    the liquidator has custody and control of the company's assets;

ii.    the directors remain in office but cease to have powers, functions, or duties other than those required or permitted to be exercised by the Mauritius Insolvency Act;

iii.    unless the liquidator agrees or the Court orders otherwise, a person shall not commence or continue legal proceedings against the company or in relation to its property; or exercise or enforce, or continue to exercise or enforce, a right or remedy over or against the property of the company;

iv.    unless the Court orders otherwise, a share in the company shall not be transferred;

v.    an alteration shall not be made to the rights or liabilities of a shareholder of the company;

vi.    a shareholder shall not exercise a power under the constitution of the company or the Mauritius Insolvency Act except for the purposes of the Act;

vii.    the constitution of the company shall not be altered;

(b)    Section 154(1) shall not affect the right of a secured creditor, subject to the

17

Fourth Schedule, to take possession of, and realize or otherwise deal with, property of the company over which that creditor has a charge;

(c)  The liquidator shall pay, out of the money received by him by the realization of the property of a debtor, the preferential claims set out in the Fourth Schedule to the extent and in the order of priority specified in that Schedule: section 328(1) of the Mauritius Insolvency Act;

(d)  After paying the preferential claims in accordance with subsection (1), the liquidator shall pay any remaining money to the general creditors in accordance with section 329: section 328(4) of the Mauritius Insolvency Act;

(e)  After paying the general creditors in accordance with section 328(4), the liquidator shall pay any remaining money to the debtor in accordance with section 330: section 328(5) of the Mauritius Insolvency Act;

(f)  In the case of a company in winding up the liquidator, after paying the general creditors in accordance with subsection (4), shall distribute the company's surplus assets: (i) in accordance with the provisions of the company's constitution; or (ii) where the company's constitution does not contain provision for the distribution of surplus assets or the company does not have a constitution, to the shareholders ratably: section 328(6) of the Mauritius Insolvency Act;

(g)  After paying preferential claims in accordance with section 328(1), the liquidator shall apply the money received by him by the realization of the property of the debtor, in satisfaction of all other claims: section 329(1) of the Mauritius Insolvency Act;

(h)  The preferential claims referred to in section 329(1) rank equally among themselves and must be paid in full, unless the money is insufficient to meet them, in which case they abate in equal proportions, and interest shall be paid on such claims to the extent and in the manner provided for in section 310: section 329(2) of the Mauritius Insolvency Act; and

(i)  After paying the claims referred to in section 329, the liquidator shall, subject to section 327, pay any surplus to the debtor.

Bucktowonsing Decl. ¶ 30.

### d.  Court Supervision

56.  Mauritian administration proceedings are subject to control or supervision by the Court.  Bucktowonsing Decl. ¶ 31.  The Mauritius Court has the authority, upon application of a

18

creditor or shareholder, to make any order the court thinks is appropriate if the administrator manages a debtor's assets or affairs to the prejudice of the debtor's creditors or shareholders. *Id.*

57.    Likewise, Mauritius liquidation proceedings are also subject to court supervision: (i) any person aggrieved by an act or decision of a liquidator can apply to the court, which can make any order it sees fit; (ii) the Mauritius Court may remove a liquidator or impose limitations or additional duties on liquidators; (iii) throughout the liquidation process the liquidators report to, are supervised by and may seek sanction or directions of the Mauritius Court; and (iv) the liquidation is brought to a close and the company dissolved by an order of the Mauritius Court. Bucktowonsing Decl. ¶¶ 32-33.

## IV.    <u>RELIEF REQUESTED</u>

58.    The Foreign Representative seeks an order, substantially in the form of the Proposed Order, granting relief, including but not limited to:

- Recognizing the Foreign Representative as the Mauritius Debtors' "foreign representative" as defined in section 101(24) of the Bankruptcy Code;

- Recognizing the Mauritius Proceedings as the "foreign main proceedings" for each respective Mauritius Debtor in accordance with sections 101(23), 1502(4), 1517, and 1520 of the Bankruptcy Code;

- Granting all relief provided by section 1520 of the Bankruptcy Code, upon recognition of the Mauritius Proceedings as foreign main proceedings, including without limitation, imposing the automatic stay of section 362 of the Bankruptcy Code in favor of the Mauritius Debtors, and any property of the Mauritius Debtors that is within the territorial jurisdiction of the United States throughout the duration of these Chapter 15 Cases or until otherwise ordered by this Court;

- Providing additional assistance or appropriate relief upon recognition of the Mauritius Proceeding as a foreign main proceeding under sections 1507 and 1521 of the Bankruptcy Code, including (i) allowing the Foreign Representative to administer and realize the Mauritius Debtors' assets, including the Bank Accounts, which are within the territorial jurisdiction of the United States, and (ii) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the Mauritius Debtors' assets, affairs, rights, obligations or liabilities if necessary;

- Granting the Foreign Representative the rights and protections to which they are entitled under chapter 15 of the Bankruptcy Code, including, but not limited to, the protections limiting the jurisdiction of U.S. Courts over the Foreign Representative in accordance with sections 306 and 1510 of the Bankruptcy Code; and

- Granting such other relief as may be necessary and appropriate, including entry of a final decree after entry of the order granting the relief requested

## V.  BASIS FOR RELIEF

### A.  Background and Purpose of Chapter 15

59.  Congress added chapter 15 to the Bankruptcy Code when it enacted title VIII of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. *See* Pub. L. No. 109-8, § 801 (2005); *see also* 8 Collier on Bankr. ¶ 1501.01 (16th ed.). Chapter 15 encourages cooperation between the United States and courts and other competent authorities of foreign countries involved in cross-border insolvency cases. 11 U.S.C. § 1501(a). Chapter 15 incorporates into United States bankruptcy law the Model Law promulgated in 1997 by the UNCITRAL Working Group V, following years of international consultation on how best to coordinate and assist cross-border insolvency cases.

60.  As a result, in interpreting chapter 15 of the Bankruptcy Code, courts are required to "consider its international origin, and the need to promote an application of this chapter [15] that is consistent with the application of similar statutes adopted by foreign jurisdictions." *See* 11 U.S.C. § 1508. Indeed, Congress has instructed that if the Court finds a provision of chapter 15 to be unclear or ambiguous, the Court may view the UNCITRAL Model Law and the Guide to Enactment with respect to the Model Law as legislative history (the "Guide"). *See* H.R. Rep. No. 109-31, at 105 (2005).   Additionally, United States courts are free to consider opinions from foreign courts interpreting similar enactments of the Model Law.  *See*, *e.g.*, *In re Condor Ins. Ltd.*, 601 F.3d 319, 321-22 (5th Cir. 2012).

**B.      Requirements for Recognition**

61.      The requirements for recognition of a foreign main proceeding are set forth in section 1517(a) of the Bankruptcy Code. Subject to section 1506, a foreign proceeding must be recognized if the following requirements are met:

     i.      such foreign proceeding for which recognition is being sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;

     ii.      the foreign representative applying for recognition is a person or body; and

     iii.      the petition meets the requirements of section 1515.

62.      As detailed below, all the requirements of section 1517(a) are met, and thus this Court should recognize the Mauritius Proceedings as foreign main proceedings and enter an order substantially in the form of the Proposed Order attached hereto as **<u>Exhibit A</u>**.

**1.      The Mauritius Liquidator Qualifies as a "Foreign Representative"**

63.      Section 101(24) of the Bankruptcy Code defines a "foreign representative" as "a person or body, including a person or body authorized on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24).

64.      Under section 101(41) of the Bankruptcy Code, a "person" includes an individual, partnership, and corporation. 11 U.S.C. § 101(41). The Mauritius Liquidator is a "person" within the meaning of section 101(41) of the Bankruptcy Code, appointed pursuant to the Liquidation Resolutions, which authorized Mr. Biltoo to act as administrator/liquidator in the Mauritius Proceedings. Section 100 of the Mauritius Insolvency Act provides that members of a company may, by a qualifying resolution, appoint an eligible insolvency practitioner as liquidator of the company. *See* Bucktowonsing Decl. ¶ 21.

65.     Accordingly, the Mauritius Liquidator falls directly into the definition of "foreign representative."

**2.      The Mauritius Proceedings each Qualify as a "Foreign Proceeding"**

66.     Chapter 15 of the Bankruptcy Code permits recognition of a "foreign proceeding." As defined in section 101(23) of the Bankruptcy Code, a "foreign proceeding" is:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23); *see In re Tradex Swiss AG*, 384 B.R. 34, 41-42 (Bankr. Mass. 2008). The Mauritius Proceedings and the Mauritius Liquidator undoubtedly satisfy each of these requirements.

67.     First, the Mauritius Proceedings are *judicial proceedings in a foreign country in which assets and affairs are subject to the control or supervision of a foreign court*.  Pursuant to the Liquidation Resolutions and the Mauritius Insolvency Act, the Mauritius Proceedings and the Mauritius Liquidator's management of the Mauritius Debtors' assets and affairs are subject to the supervision and control of the Mauritius Court. Bucktowonsing Decl. ¶ 31.  As explained in the Guide, "control or supervision…may be potential rather than actual" and are satisfied where, as here, "an insolvency representative is subject to control or supervision by the court." Guide ¶ 74 All creditor claims against the Mauritius Debtors must be submitted in the Mauritius Proceedings, and all claimants have the right to access the Mauritius Court and appeal initial decisions of the Mauritius Liquidator regarding their claims. Bucktowonsing Decl. ¶¶ 25, 28, 33, 34.  Additionally, under the Mauritius Insolvency Act, the Mauritius Liquidator may apply to the Mauritius Court for direction, and the Mauritius Court may remove the Mauritius Liquidator for cause.

68.     Second, the Mauritius Proceedings are *taking place under a law relating to insolvency or the adjustment of debt for the purposes of reorganization or liquidation of debt*.  The Mauritius Insolvency Act provides the statutory bases for Mauritius entities to wind up and liquidate.  Bucktowonsing Decl. ¶¶ 10, 32-33. Thus, the Mauritius Insolvency Act is "a law relating to insolvency or the adjustment of debt" and for the purposes of a liquidation. *See generally id.*; 11 U.S.C. § 101(23).

69.     *Third*, the Mauritius Proceedings are collective in nature, in that all affected creditors are allowed to participate. In *In re Betcorp Ltd.*, for instance, the bankruptcy court discussed the contrasts between a true collective proceeding, where such proceeding "considers the rights and obligations of all creditors," and a non-collective proceeding, such as a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor." *See* 400 B.R. 266, 277 (Bankr. D. Nev. 2009).  This concept "contemplates both the consideration and eventual treatment of claims of various types of creditors . . . ." *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136, 140 (Bankr. S.D.N.Y. 2012) ("The main test of whether a proceeding is collective is whether all creditors' interests were considered in the proceeding.").

70.     Here, the Mauritius Proceedings were commenced with the goal of maximizing value for the Mauritius Debtors' creditors. Bucktowonsing Decl. ¶¶ 29, 30.   Importantly, the Mauritius Proceedings will not prohibit any of the Mauritius Debtors' creditors from participating in the Mauritius Proceedings.  *Id.*  The Mauritius Proceedings provide for a stay or moratorium so that, among other things, no one creditor can proceed with or commence against the Mauritius Debtors any suit, action, or other proceeding without the leave of the Mauritius Court. *Id.*  ¶¶ 25, 29, 31.  Ultimately, the Mauritius Proceedings are intended to treat all claims of creditor and interests of shareholders (partners), collectively and comprehensively, rather than any single

82616465;1

creditor or stakeholder alone. *Id.* ¶¶ 29-31. *See, e.g.*, *In re Ashapura Minechem Ltd.,* No. 11-14668

(JMP) (Bankr. S.D.N.Y. Nov. 22, 2011), ECF No. 34, at 6 (*quoting In re Betcorp Ltd.*, 400 B.R.

at 281); *In re Gold & Honey, Ltd*., 410 B.R. 357, 370 (Bankr. E.D.N.Y. 2009) (citations omitted).

71.     For the foregoing reasons, each Mauritius Proceedings is a "foreign proceeding"

within the meaning of section 101(23) of the Bankruptcy Code and the Mauritius Liquidator is a

"foreign representative" within the meaning of section 101(23) of the Bankruptcy Code.

### 3.     Nothing about Mauritius Law Should Discourage this Court from finding that the "Foreign Representative" and "Foreign Proceeding" Requirements have been Met

*Chapter 15 explicitly commands that the courts attempt to maintain uniformity of interpretation of this Model Law.  Thus the United States courts can look to the court decisions of other countries who have adopted it one form or another.*

-Jay Lawrence Westbrook[4]

72.     It appears that no Mauritius insolvency professional has sought recognition of a

Mauritius insolvency proceeding in the United States.  So obviously there is scant guidance from

United States courts on determining whether a Mauritius insolvency professional qualifies as a

"foreign representative" or a Mauritius insolvency proceeding qualifies as a "foreign proceeding."

73.     Nonetheless, the Mauritius insolvency law and courts are similar to and derived

from New Zealand insolvency law, which certainly has been recognized many times over by

United States courts.  *See* Bucktowonsing Decl. ¶ 10; *See In re Montoux Ltd.*, Case No. 25-10043

[ECF No. 36] (Bankr. D. Del. Feb. 19, 2025); *In re Wikeley Family Trustee Ltd.*, Case No. 23-

50420 [ECF No. 42] (Bankr. E.D. Ky May 25, 2023);  *In re Cryptopia Ltd.*, Case No. 19-11688

[ECF No. 19] (Bankr. S.D.N.Y. June 24, 2019); *In re Cedenco Ohakune*, Case No. 11-30704 [ECF

---

[4] *Chapter 15 at Last*, 79 Am. Bankr.L.J. 713, 720 (2005).

No. 15] (Bankr. N.D. Cal. Mar. 29, 2011); *In re Sail City Apparel Ltd.*, Case No. 09-336607 [ECF No. 24] (Bankr. D. N.J. Dec. 3, 2009).

74.     Even though the United States has not considered recognizing a Mauritius insolvency proceeding, courts in the United Kingdom, Singapore, and Kenya have, and they granted recognition without hesitation.  *See*, *e.g.*, *In the Matter of Air Mauritius Ltd.*, (June 22, 2020) Order, U.K. High Court of Justice, Business and Property Court of England and Whales, Insolvency and Companies List; Bucktowonsing Decl. ¶ 6.

75.     This Court can (and should) look to the examples from the United Kingdom and Singapore and recognize the Mauritius foreign representative and foreign proceeding.  As suggested in the quote above by Jay L. Westbrook, a principal drafter of the Model Law, United States courts should look to decisions made by foreign courts when they make determinations under other countries' adoption of the Model law.  Indeed, chapter 15 itself, in section 1508, provides that, "[i[n interpreting this chapter, the court shall consider its international origin, and *the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions*." 11 U.S.C. § 1508 (emphasis added).  As the UNCITRAL Guide advises, there is a "need for uniformity in…the interpretation" of the Model Law.  Guide ¶ 22.  Several United States courts have acknowledged that courts can and should look to foreign jurisdictions when interpreting chapter 15. *See*, *e.g.*, *In re Condor Ins. Ltd.*, 601 F.3d 319, 321-22 (5th Cir. 2012) (refers to section 1508 of the Bankruptcy Code (see below)); *In re Loy*, 432 B.R. 551, 560 (E.D. Va. 2010) (same); *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 47, n. 37 (Bank. S.D.N.Y. 2008) (citing to Case 341/04, *Bondi v. Bank of Am., N.A. (In re Eurofood IFSC Ltd.)*., 2006 E.C.R. 1-3813, p. 18-19, ¶ 32, 2006 WL 1142304 (E.V.J. May 2, 2006) in support of a COMI determination).

**4.      The Mauritius Proceedings are Foreign Main Proceedings**

76.      The Mauritius Proceedings are "foreign main proceedings" within the meaning of section 1502(4) of the Bankruptcy Code because the Mauritius Debtors' COMI is in Mauritius. *See generally* Biltoo Decl.  The Bankruptcy Code defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). A foreign proceeding "shall be recognized" as a foreign main proceeding if it is pending where the debtor has its COMI. *See* 11 U.S.C. § 1517(b)(1).

**a.      The COMI Presumption**

77.      Although the Bankruptcy Code does not define "center of main interests," pursuant to section 1516(c) of the Bankruptcy Code, in the absence of evidence to the contrary, the debtor's registered office, which in this case is Mauritius, is presumed to be its COMI. 11 U.S.C. § 1516(c); *e.g. In re Suntech Power Holdings Co.*, 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014) (quoting section 1516(c)); *In re ABC Learning Centres Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010) (holding that debtor's registered jurisdiction was its COMI where debtor established the section 1516 presumption, and no evidence was presented rebutting that presumption).

78.      Here, the Mauritius Debtors' registered offices are in Mauritius and have been since their formation—2010, 2013, and 2016 for VCM, the Mauritius India Fund, and the Mauritius Marco Fund respectively.  Biltoo Decl. ¶¶ 6-9; Bucktowonsing Decl. ¶¶13-15. Further, there is no contrary evidence to rebut the resulting presumption that Mauritius is the Mauritius Debtors' COMI.  Accordingly, the Debtors' presumptive COMI is Mauritius.

**b.      Beyond the Presumption**

79.      Even if this Court decides to look past the presumption, the Mauritius Debtors' COMI is Mauritius for a variety of reasons.  "The relevant temporal anchor for the determination of the location of the debtor's COMI is the date of the chapter 15 petition." *In re Giftcraft Ltd.*,

2025 Bankr. LEXIS 1350, at *20, Case No. 25-22030 (MG), (Bankr. S.D.N.Y. June 4, 2025); *In re Modern Land (China) Co.*, 641 B.R 768, (Bankr. S.D.N.Y. 2022) ("COMI is determined as of the date of the Chapter 15 petition, *without regard to a debtor's historic operational activity*.") (emphasis added); *Morning Mist Holdings Ltd. V. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013) ("a debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed, as the statutory text suggests."); *In re Millennium Global Emerging Credit Master Fund Ltd*, 458 B.R. 63 (Bankr. S.D.N.Y. 2011) (same).

80.    In making a COMI determination, courts have considered a variety of factors stemming from the factors initially enumerated in the *SPhinX* opinion, which was published shortly after chapter 15's enactment.  *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006).  But as noted by many courts over the years, while certain factors or sets of factors can offer a "'helpful guide' in determining a debtor's COMI, they are not exclusive, consideration of…specific factors is 'neither required nor dispositive,' and courts are cautioned against…[any type of] 'mechanical application.'"  *Giftcraft*, 2025 Bankr. LEXIS 1350, at *21 (quoting *Fairfield Sentry*, 714 F.3d at 137).

81.    Courts in the United States focus on determining what the creditors and other interested parties expect a debtor's COMI to be since a company's COMI must be "readily ascertainable by third parties."  *In re British Am. Ins. Co.*, 425 B.R. 884, 912 (Bankr. S.D. Fla. 2010); *e.g. Fairfield*, 714 F.3d at 136-138 (same); *Modern Land*, 641 B.R. at 27-28; *Giftcraft*, 2025 Bankr. LEXIS 1350, at *20 (same); *Suntech*, 520 B.R. at 413 (same); *Grand Prix*, 2009 WL 1410519, at *6 (same).  This is consistent with the history of the COMI concept, which chapter 15 derived from the Model Law.  The COMI term was also used by the European Counsel (EC) Regulation 1346/2000 of May 29, 2000, on European Cross-Border Insolvency Proceedings (the

"EC Regulation").  The UNCITRAL Guide ¶ 13 provides that the EC Regulation "indicates that the term should correspond to 'the place where the debtor conducts the administration of his interest on a regular basis and is therefore ascertainable by third parties.'"[5]

82.    In determining what is "reasonably ascertainable," as stated by the Second Circuit in *Fairfield*, courts may certainly consider "a debtor's liquidation activities."  714 F.3d at 138. Indeed, pre-filing restructuring or liquidation activities can lodge a debtor's COMI where the restructuring or liquidation is taking place.[6]  For example, in *Modern Land*, the court found that pre-filing restructuring activities will shift a debtor's COMI, particularly where the debtor is an entity with such limited operations that restructuring activity constitutes its "primary business activity" prior to the filing of the chapter 15 petition."  641 B.R. at 783.

83.    Where, as here, the liquidators of a foreign debtor have engaged in material liquidation efforts and related activities prior to the filing of a chapter 15 petition, there is no doubt that the debtor's COMI is where the liquidation is taking place.  *Fairfield Sentry Ltd.*, 714 F.3d at 137.

84.    Since the commencement of the Mauritius Proceedings, substantially all activities associated therewith have been conducted and/or overseen by the Mauritius Liquidator, including

---

[5] Additionally, the UNCITRAL Guide ¶ 127, explained that it is "not advisable to include more than one criterion for qualifying a foreign proceeding as a main proceeding and provide that on the basis of any of these criteria a proceeding could be deemed a main proceeding" because such an approach "involving 'multiple criteria' would raise the risk of competing claims from foreign proceedings for recognition as a main proceeding."

[6] The Mauritius Liquidator contends that the Mauritius Debtors' COMI is and has always been in Mauritius, but if it did shift to Mauritius after the Mauritius Proceedings commenced due to liquidation activities, this is perfectly acceptable under current jurisprudence in the United States.  *See, e.g., Suntech*, 520 B.R. 413; *In re Ocean Rig UDW Inc.*, 570 B.R. 687 (Bankr. S.D.N.Y. 2017).  A shifting COMI has also been generally accepted by other jurisdictions that determine a debtor's COMI at the date of the recognition petition.  Justice Aedit Abdullah adopted the US test for COMI determinations in Singapore.  *See In re Zetta Jet Pte Ltd.* [2018] SGHC 16 [19] (Sing).  He explained in a recent article that a " shift or transfer of [a] COMI is not a bad thing: where substantial connections exist that point to that COMI being the appropriate forum for restructuring or insolvency, even if the shifts occurred after the date of the foreign insolvency application."  Justice Aedit Abdullah, "Celebrating and Reflecting on 25 Years of the Model Law on Cross Border Insolvency: the Newbie's Take — Singapore and the Model Law," available at www.iiiglobal.org/file. cfm/46/docs/panel%203.%20abdullah%20singapore%20and%20the%20model%20law.pdf.

organizing creditor meetings and overseeing the collection of information related to the Mauritius

Debtors' assets.  Biltoo Decl. ¶¶ 30-37.  These types of activities have been held by multiple courts

enough to satisfy the COMI standard.  *See*, *e.g.*, *Giftcraft*, 2025 Bankr. LEXIS 1350, at *20

("organization of creditor meetings, or facilitation of related operational or liquidation activities or

administrative functions" were all factors that should be considered when determining a debtor's

COMI).  Among other things, the Mauritius Liquidator is: (i) overseeing and filing all necessary

notices and displaced the Mauritius Debtors' prior management and assumed their duties,

(ii) completing the process of investigating and assessing the claims of the Mauritius Debtors and

its creditors and investors, (iii) gathering information about the operation and management of the

Mauritius Debtors' businesses before the Mauritius Proceedings, and (iv) engaged in discussions

with stakeholders. Biltoo Decl. ¶¶ 30-37

85.     While the Mauritius Debtors have claims to certain bank accounts in the United

States and investments and assets in other jurisdictions, the significant majority of decisions related

to the liquidations are made by the Mauritius Liquidator in Mauritius and under the supervision of

the Mauritius Court.  Biltoo Decl. ¶¶ 34-37; Bucktowonsing Decl. ¶¶ 32-33.  The collection of any

value from the Bank Accounts or other assets will be overseen from Mauritius by the Mauritius

Debtors through the Mauritius Proceedings.  *See generally* Biltoo Decl.

86.     The *Suntech* opinion is instructive.  In *Suntech*, the Court held that the activities of

a Cayman provisional liquidator were sufficient to establish the Cayman Islands as the debtor's

COMI, even though the debtor's principal place of business prior to foreign liquidation was

elsewhere. 520 B.R. at 419.

87.     A primary factor for the *Suntech* court was the provisional liquidator's active

involvement in managing the debtor fund's administrative activities, while the directors maintained

day-to-day responsibilities for the Mauritius Debtors. As stated above, the Mauritius Liquidator in these cases have full authority over the Mauritius Debtors, including administrative and day-to-day operations. The Mauritius Liquidator has been continuously working on managing the Mauritius Debtors' liquidation and gathering information related to how its funds were deployed.

88. As set forth in detail in the paragraphs above, as well as in the accompanying Biltoo Decl., it is respectfully submitted that the level of liquidation and ongoing business activity in this case substantially exceeds what this Court and other courts have previously found sufficient to establish COMI.

89. Under the circumstances, the Mauritius Liquidator submits that there is ample evidence and precedent to support recognition of the Mauritius Proceedings as foreign main proceedings.

**C. The Mauritius Debtors' are Eligible Debtors under Chapter 15 of the Bankruptcy Code**

90. Several courts have held that access to chapter 15 relief requires that the debtor only be subject to a foreign proceeding. *See Talal Qais Abdulmunem Al Zawai v.* Diss *(In re Al Zawawi)*, No. 22-11024, 2024 U.S. App. LEXIS 7955, at *1, *21 (11th Cir. Apr. 3, 2024) *; In re Bemarmara Consulting a.s.*, No. 13-13037, ECF Nos. 38 and 41 (Bankr. Del. Dec. 17, 2013). The Mauritius Debtors easily satisfy this definition of a debtor found in section 1502(1) of the Bankruptcy Code since the Mauritius Debtors are currently entities subject to foreign proceedings.

91. Other courts, however, have held that a Debtor must meet the general eligibility requirements under Bankruptcy Code section 109(a). *See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 250 (2d Cir. 2013); *In re B.C.I. Finances PTY Ltd.*, Case No. 17-11266 (PB) [ECF No. 203] (Bankr. S.D.N.Y. July 8, 2025) (acknowledging arguments as to why section 109 should not apply in a Chapter 15 case, but holding that *Barnet* is

the law of the Second Circuit). Bankruptcy Code section 103(a) provides that chapter 1, which includes section 109(a), "appl[ies] in a case under chapter 15." 11 U.S.C. § 103(a).  Section 109(a) provides that "[n]otwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title." Decisions interpreting section 109(a) of the Bankruptcy Code unanimously hold that a debtor satisfies section 109's requirements even when it only has a nominal amount of property in the United States.  Indeed, courts have specifically concluded that a retainer account constitutes property of the debtors that satisfied section 109(a) because "it is well established that '[a] debtor's funds held in a retainer account in the possession of counsel to a foreign representative constitute property of the debtor in the United States and satisfy the eligibility requirements of section 109,'" regardless of amount.  *In re B.C.I. Finances*, 583 B.R. 288, 293 (Bankr. S.D.N.Y. 2018 (explaining that section 109(a) only says that the debtor must have property and "says nothing about the amount of such property nor does it direct that there by any inquiry into the circumstances surrounding the debtors' acquisition of the property") (internal citations omitted).

92.     As one court colorfully explained, section 109(a) of the Bankruptcy code "leave[s] the Court no discretion to consider whether it was the intent of Congress to permit someone to obtain a bankruptcy discharge solely on the basis of having a dollar, a dime or a peppercorn located in the United States."  *In re McTague*, 198 B.R. 428, 432 (Bankr. W.D.N.Y. 1996).  In sum, if the debtor has any property in the United States, section 109(a) of the Bankruptcy Code is satisfied. *In re Cenargo Int'l, PLC*, 294 B.R. 571, 603 (Bankr. S.D.N.Y. 2003) (debtor was eligible under Chapter 15 since it had joint bank accounts and pledged stock in the United States); *In re Aerovias Nacionales de Colombia S.A.*, 303 B.R. 1, 8-9 (Bankr. S.D.N.Y. 2003) (minimal amount of property in the United States is enough to establish section 109(a) eligibility).

93.     The Mauritius Debtors are obviously eligible debtors under section 109(a) because they have property in the United States in the form of the Bank Accounts, which are held in Providence Rhode Island. Biltoo Decl. ¶ 5, 36

## VI.     ALTERNATIVELY, THE MAURITIUS PROCEEDINGS SHOULD BE RECOGNIZED AS A FOREIGN NON-MAIN PROCEEDING

94.     Each of the Mauritius Proceedings meet the requirements of a "foreign main proceeding" pursuant to section 1502 of the Bankruptcy Code. Nevertheless, should the Court determine that the Mauritius Proceedings should not be recognized as foreign main proceedings, the Mauritius Liquidator submits that, in the alternative, the Mauritius Proceedings should be recognized as foreign nonmain proceedings under sections 1517(b)(2) and 1502(5) of the Bankruptcy Code.

95.     Section 1502(5) of the Bankruptcy Code defines a foreign nonmain proceeding as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5). In turn, "establishment" is defined by section 1502(2) as being "any place of operations where the debtor carries out non-transitory economic activity." 11 U.S.C. § 1502(2). The "establishment" requirement is satisfied by local economic activities. *See In re Fairfield Sentry Ltd*. (GBD), No. 10-13164, 2011 WL 4357421, at *10 n.8 (S.D.N.Y. Sept. 16, 2011); Guide ¶ 89 ("professional" activities are local economic activities).

96.     The Mauritius Liquidator respectfully submits that, at a minimum, their activities in Mauritius constitute non-transitory economic activities.   *See generally* Biltoo Decl.   The Mauritius Liquidator is actively conducting professional activities by managing the Mauritius Debtors' investment operations. *Id.* at ¶ 29.  There is no foreign or domestic insolvency proceeding other than the Mauritius Proceedings. *Id.* at ¶ 4.

82616465;1

97.     As such, there can be no dispute that the Mauritius Proceedings are legitimate insolvency proceedings. Under the circumstances and given that Mauritius Debtors' ongoing winding-up activities are being conducted from Mauritius, at a minimum, this Court should recognize the Mauritius Proceedings as foreign nonmain proceedings pursuant to Chapter 15 and further, to grant the Mauritius Liquidator the discretionary relief requested.

## VII.   THE MAURITIUS PROCEEDINGS MEET THE TECHNICAL REQUIREMENTS FOR RECOGNITION

98.     In addition to being a foreign main (or nonmain) proceeding brought by duly appointed foreign representatives, the Mauritius Proceedings meets all other requirements for recognition under section 1515 of the Bankruptcy Code. The Chapter 15 Petition is accompanied by certified copies of the Liquidation Resolutions, which evidence the commencement of the Mauritius Proceedings and the appointment of the Mauritius Liquidator as the administrator or liquidator of the Mauritius Debtors. The Chapter 15 Petition also is accompanied by a declaration that contains a statement identifying all foreign proceedings with respect to the Mauritius Debtors that are known to the Mauritius Liquidator. *See* 11 U.S.C. §§ 1515(b), (c).

99.     The Chapter 15 Petition likewise is accompanied by a declaration containing the information required by Bankruptcy Rule 1007, including the disclosures required by Bankruptcy Rule 7007.1, a statement indicating that there are no other persons or entities known to the Mauritius Liquidator that are authorized to administer foreign proceeding with respect to the Mauritius Debtors, and a list of all parties to litigation with the Mauritius Debtors in the United States.  All documents supporting the Chapter 15 Petition are in English. *See* 11 U.S.C. § 1515(d). For all of these reasons, this Court can and should find that all of the requirements for recognition of the Mauritius Proceedings as foreign main proceedings under chapter 15 have been satisfied.

82616465;1

## VIII.    RELIEF PURSUANT TO SECTION 1521 IS APPROPRIATE

100.    In addition to the relief that is automatically provided by section 1520 of the Bankruptcy Code upon recognition of a foreign main proceeding, the Mauritius Liquidator requests additional relief pursuant to section 1521 of the Bankruptcy Code to protect the Mauritius Debtors' assets and its creditors' interests. Section 1521 of the Bankruptcy Code provides, in part, that the court may grant a foreign representative "any appropriate relief," including "any additional relief that may be available to a trustee," subject to certain limitations (which do not apply here) where necessary to effectuate the purpose of chapter 15 and to protect the debtor's assets and creditors' interests. 11 U.S.C. § 1521(a) .

101.    The Foreign Representative requests that the Court grant additional relief pursuant, including that authorized under section 1521(a)(5) of the Bankruptcy Code to allow the Mauritius Liquidator to take control of the Bank Accounts and use the funds therein to administer the Mauritius Debtors' estates as well as (to the extent necessary) to examine witnesses, and take evidence or the delivery of information concerning the Mauritius Debtors' assets, affairs, rights, obligations or liabilities if necessary.

## IX.    CONCLUSION

The Foreign Representative respectfully requests entry of the Proposed Order attached hereto as **Exhibit A**, (i) recognizing the Mauritius Proceedings as "foreign main proceedings," (ii) recognizing the Mauritius Liquidator as the Mauritius Debtors' foreign representatives, (iii) granting additional relief under section 1521, and (iii) granting such other and further relief as the Court deems just and proper.

*[Remainder of page intentional left blank]*

Dated: September 5, 2025     Respectfully submitted,

           AKERMAN LLP

           */s/ H. Frances Kleiner*
           H. Frances Kleiner (R.I. #2284)
           1251 Avenue of the Americas, 37th Floor
           New York, NY 10020
           Telephone: (212) 880-3800
           Facsimile:  (212) 880-8965
           frances.kleiner@akerman.com

           -and-

           R. Adam Swick (*Pro Hac Vice to be filed*)
           500 West 5th Street, Suite 1210
           Austin, TX 78701
           Telephone: (737) 999-7103
           Facsimile: (512) 623-6701
           adam.swick@akerman.com

           *Attorneys for Bavesh Huns Biltoo, in his capacity as*
           *Administrator of Venus Capital Management*
           *Company and Liquidator of Venus India Structured*
           *Finance Master Limited and Venus Master Fund*

82616465;1

## VERIFICATION OF PETITION

I, Bavesh Huns Biltoo, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am a Head of Advisory for KPMG Mauritius at KPMG Mauritius whose offices are located at KPMG Centre, 31 Cybercity, Ebene, Mauritius 72201.

I am authorized to act as a duly appointed foreign representative of Venus Capital Management Company, Venus India Structured Finance Master Limited, and Venus Master Fund.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 5, 2025
Ebene, Mauritius

By: Bavesh Huns Biltoo Head of Advisory at KPMG Mauritius, in his capacity as Administrator of Venus Capital Management Company and Liquidator of Venus India Structured Finance Master Limited and Venus Master Fund

36