# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re: ) | |
| ) | Case No. 1:25-10709 |
| Venus Capital Management Company ) | Chapter 15 |
| ) | |
| Debtor in a Foreign Proceeding.[1] ) | |
| ) | |
| In re: ) | |
| ) | Case No. 1:25-10710 |
| Venus India Structured Finance Master ) | Chapter 15 |
| Limited ) | |
| ) | |
| Debtor in a Foreign Proceeding. ) | |
| ) | |
| In re: ) | |
| ) | Case No. 1:25-10711 |
| Venus Master Fund ) | Chapter 15 |
| ) | |
| Debtor in a Foreign Proceeding. ) | |

## DECLARATION OF RAJESHWAR BUCKTOWONSING

I, Rajeshwar Bucktowonsing, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge, information, and belief.

1.  I am the Managing Partner at Orison Legal ("Orison"), Level 1-2 Hennessy Court, Pope Hennessy Street, Port Louis, Republic of Mauritius, Mauritius. I am the legal law advisor to Mr. Huns Biltoo, in his capacity as the administrator (the "Biltoo" or the "Mauritius Liquidator") of Venus Capital Management Company ("VCM"), Venus India Structured Finance Mater Limited ("Mauritius India Fund") and Venus Master Fund ("Mauritius Macro Fund," collectively with the Mauritius India Fund, the "Mauritius Funds") (collectively, the "Mauritius Debtors").

---

[1] The debtor's company registration number is [ ].

82702410;2

The Mauritius Debtors are subject to insolvency proceedings (the "Mauritius Proceedings") pending in the Republic of Mauritius ("Mauritius").

2. I am authorised by Biltoo and the Mauritius Debtors to make this declaration in support of (i) Form 401 Petitions ("Form Petitions"), along with the exhibits thereto, (ii) the Verified Petitions (the "Verified Petition" and collectively with the Form Petitions, the "Petitions"), (iii) the Application of Foreign Representative for Order (I) Specifying Form and Manner of Service (II) Scheduling Hearing on Recognition and Additional Relief and (III) Setting Deadline for Objections and Replies, and (iv) Motion of Foreign Representative Pursuant to Federal Rule of Bankruptcy Procedure 1015(b) for Order Directing Joint Administration of Cases under Chapter 15 of the Bankruptcy Code.

3. Unless otherwise stated, the matters to which I refer in this affidavit are matters within my personal knowledge and are true to the best of my knowledge and belief. Where they are not within my personal knowledge, I set out the source of my knowledge of them and confirm that they are true to the best of my information and belief. Attached to this affidavit is a paginated exhibit marked **Exhibit A**, containing a true copy of Part III, Sub-Part IV of the Mauritian Insolvency Act 2009, as amended (the "Mauritius Insolvency Act"). References in this affidavit to Sections are to sections of the Mauritius Insolvency Act as exhibited.

## I. Personal Background and Qualifications

4. Orison is a well-regarded Port Louis-based law firm with notable experience in the corporate and commercial spheres. Orison's areas of expertise include restructuring and insolvency, asset recovery, arbitration matters, banking, and finance transactions.

5. I am registered to practise law in Mauritius and have been practising since 1984. I have accumulated over 40 years of experience as an attorney-at-law and I am well versed in matters relating to Mauritian insolvency law. I was received as Senior Attorney in June, 2010.

6. I have been involved in many international insolvency and restructuring cases. I advised:

- Air Mauritius during its Mauritian insolvency case, including assisting Air Mauritius seeking recognition of its insolvency in the United Kingdom and Singapore. A true and correct copy of the UK order recognising the Air Mauritius Mauritian insolvency proceeding is attached hereto as **Exhibit B**.

- Zarara Oil and Gas Limited ("Zarara"), a Mauritian Company which had investments and assets in Kenya, was placed in Liquidation by Order of the Mauritius Court. The recognition of its insolvency proceedings was achieved in Kenya.

7. I am presently advising:

- VSoft Holdings LLC, a Mauritian Company which has investments in India was placed in Liquidation by the Mauritius Court. I am assisting the Company in taking control of its assets in India.

- Emirates Trading Agency L.L.C., a Company registered in Dubai having several subsidiaries in Mauritius and India, was placed in liquidation by the Dubai court. Application for the recognition of the Dubai insolvency was sought in Mauritius.

8. I have been appointed as a member of the Working Group Committee setup by the Ministry of Finance, Economic Planning and Development of Mauritius to (i) assist in the insolvency reforms proposed by the World Bank, and (ii) contribute to formulating the necessary provisions to the said reforms and to assist by sharing my experience and expertise in the overall reforms to the Mauritian Insolvency Legislation.

9. My firm, Orison, and myself individually are ranked in Chambers & Partners

II. **Overview of Mauritius Insolvency Law**

10. In Mauritius, the primary legal framework regulating insolvency proceedings is the Mauritius Insolvency Act. It is complemented by the Companies Act 2001, along with regulations

established under the Companies Act 2001 and legal precedents (collectively, the "Mauritius Companies Act"). Both the Mauritius Insolvency Act and the Mauritius Companies Act are modelled after the equivalent legislation in New Zealand. The insolvency law basically encompasses (i) bankruptcy for individuals, and (ii) voluntary or court liquidation, voluntary administration, and receivership for companies.

11. The role of the Supreme Court (Commercial Division) is a significant one, in particular in giving directions to insolvency practitioners and approving the receiver's or liquidator's remuneration, fees, expenses generally controlling the process. The Court deals with cases involving insolvency on a daily basis and often renders judgments which are upheld on appeal.

12. The Mauritian insolvency legislation is mostly creditor-friendly without however denying access to justice / judicial intervention to debtors. In light of Mauritius' position as an international financial centre, the role of creditors (predominantly based in foreign jurisdictions), has played an important role in the development and policy of Mauritius' insolvency law. In that context, the provisions dealing with Cross-Border Insolvency contained in the Mauritius Insolvency Act was proclaimed in July 2019 enacting the rules governing cross-border insolvency in Mauritius based mainly on the United Nations Commission on International Trade Law ("UNCITRAL") Model Law on Cross-Border Insolvency.

### III. The Mauritius Debtors' Corporate Information

13. VCM was originally incorporated under the Mauritius Companies Act as Sedna Investment Management Inc. on May 19, 2010, and operated pursuant to a Memorandum and Articles of Association, last amended on November 23, 2015. A Certificate of Incorporation on Change of Name was filed on January 29, 2014, changing the entity's name to Venus Capital

Management Company.  VCM holds a Global Business License issued by the Mauritius Financial Services Act of 2007 and operates as a Certified Investment Scheme ("CIS") Manager under Section 98 of the Mauritius Securities Act 2005.

14. The Mauritius India Fund was originally incorporated under the Mauritius Companies Act as Sedna No. 1 Limited on January 24, 2013 and operated pursuant to a Memorandum and Articles of Association, last amended on November 23, 2015.  A Certificate of Incorporation on Change of Name was filed on June 25, 2014, changing the entity's name to VISFF No.1 Ltd.  A Second Certificate of Incorporation on Change of Name was filed on September 5, 2022 changing the entity's name to Venus India Structured Finance Master Limited.

15. The Mauritius Macro Fund was incorporated under the Mauritius Companies Act on March 8, 2016 and operated pursuant to a Constitution dated January 18, 2016.

## IV. The Insolvency of the Mauritius Debtors

### A. Initiation of the Mauritius Insolvency Proceedings

16. The Mauritius Insolvency Act deals with the insolvency of individuals and companies and the distribution of assets in insolvency and related matters.

17. As regards companies, an administrator may be appointed by the company, the company's liquidator (if it is in liquidation), a provisional liquidator, a secured creditor holding a charge over the whole or substantially the whole of the company's property or the Court as provided for by Section 215(4) of the Mauritius Insolvency Act.

18. A company appointment must be in writing and may only take place if the directors have resolved that, in their opinion, the company is, or is likely to become, insolvent, and that an administrator should be appointed.

19. The Mauritius Debtors' boards all resolved and took other actions to initiate

5

insolvency proceedings:

    (a)    On June 27, 2024, the board of the Mauritius India Fund was solvent and should be wound up pursuant to Section 137.1 of the Mauritius Insolvency Act.

    (b)    On 27 November 2024, the board of directors of VCM resolved that VCM was insolvent and that Huns Biltoo, a registered insolvency professional at KPMG, be appointed as the Administrator pursuant to Section 215(6)(a) of the Mauritius Insolvency Act.

    (c)    On November 29, 2024, the board of the Mauritius Macro Fund was solvent and should be wound up pursuant to Section 139(2) of the Mauritius Insolvency Act.

    (d)    I understand that certified copies of the shareholder resolutions discussed above are attached as Exhibit A to the Biltoo Decl.

    (e)    VCM notified the Mauritius Financial Services Commission ("FSC") that it no longer could operate as a CIS Manager. The Mauritius Funds also notified the FSC that they intended to wind up. The FSC had no objections.

    (f)    The Administrators sent notification to the Director of Insolvency and Registrar of Companies in Mauritius of their appointment, receipt of which was acknowledged.

**B.**    **General Provisions Regarding Mauritius Insolvency Proceedings**

*Administration*

20.     The act of appointing the Administrator itself commences the administration and there is no separate requirement for an order or decision of the Mauritian courts to commence the Mauritian Proceedings. The process of administration ends where:

    (a)    a deed of company arrangement (the "DOCA") is executed by the company and the deed administrator;

    (b)    the company's creditors resolve that the administration should end;

    (c)    the company's creditors appoint a liquidator by resolution passed at a watershed meeting; or

    (d)    any of the events referred to in paragraphs (i) – (vi) below occurs:

      i.    the Court (meaning the Bankruptcy Division of the Supreme Court of Mauritius) orders that the administration end because it is satisfied that the company is solvent, or for any other sufficient reason;

      ii.    the period of 28 days (or longer if extended by the Court) after the administrator is appointed (the "<u>convening period</u>") expires without a watershed meeting having been called or an application having been made to Court to extend that period;

      iii.    the Court dismisses an application to extend the convening period which has expired after the application for extension was made;

      iv.    watershed meeting ends without a resolution that the company execute a DOCA;

      v.    the company fails to execute a DOCA within 21 days after the watershed meeting has approved it (or such longer period allowed by the Court); or

      vi.    the Court appoints a liquidator or an interim liquidator. Section 214(3) Insolvency Act.

21.    The entry into administration results in the directors remaining in office but being unable to act as officers of the company without the prior written approval of the administrator. Except for payments out of the company's account made in good faith in the ordinary course of banking business and at a time before a bank is notified of the appointment of an administrator, transactions or dealings by the company in administration are void unless they are entered into by the administrator on behalf of the company, with his written consent or under a Court order. Sections 224, 226 of the Insolvency Act.

*Liquidation*

22.    Under Section 100 of the Mauritius Insolvency Act, a company in Mauritius may be liquidated through three main routes, by: (i) order of the Supreme Court, voluntary resolution of shareholders or creditors, or a resolution passed at a watershed meeting. The procedure followed depends largely on whether the company is solvent or insolvent at the time liquidation is sought.

23. In a shareholders' voluntary winding up (Section 100 (2)(b)), used where the company is solvent, the shareholders pass a special resolution, and the directors must sign a declaration of solvency confirming that debts can be paid in full within twelve months. A liquidator is then appointed to wind up the company's affairs and distribute its assets. If, however, the liquidator later determines that the company cannot meet its debts, the process converts into a creditors' voluntary winding up, where creditors assume greater control and may appoint their own liquidator.

24. Where the company is insolvent, liquidation generally proceeds through a creditors' voluntary winding up (Section 100 (2)(a)). The directors must first declare insolvency and call meetings of shareholders and creditors. Creditors have the right to nominate the liquidator, form a committee of inspection, and oversee the process. The winding up continues until the company's affairs are fully resolved, after which the liquidator prepares final accounts, calls a closing meeting, and files notice of dissolution.

25. Alternatively, liquidation may be ordered by the Court on the petition of the company itself, its shareholders, creditors, or regulatory bodies (Section 102 (1)). Grounds include inability to pay debts, which may be evidenced by failure to comply with a statutory demand. Once a winding up order is made, the Official Receiver or a Court-appointed liquidator assumes control of the company's assets and operations, while directors' powers cease. Legal proceedings against the company are stayed unless the Court permits otherwise.

26. The liquidator plays a central role in all forms of winding up. His duties include taking control of the company's assets, realising them, distributing proceeds to creditors, and reporting any misconduct or offences. Creditors must prove their debts by submitting formal claims to participate in distributions. The process ends with the dissolution of the company once

all matters are settled and statutory filings completed.

27.     When a company is placed into liquidation, the Official Receiver or the appointed liquidator is responsible for realising the company's property and distributing the proceeds. The law requires that preferential claims, as listed in the Fourth Schedule of the Insolvency Act (the "Fourth Schedule"), are settled first and in the order of priority prescribed. Once these have been paid, any remaining funds are distributed among the general creditors.

28.     If, after payment of all creditors, there are surplus assets, these are distributed to the company's shareholders. The distribution is made either in accordance with the company's constitution, if it contains provisions to that effect, or, in the absence of such provisions, the assets are divided rateably among the shareholders. This ensures that creditors are satisfied before any return is made to shareholders.

C.  **Collective Proceedings**

29.     VCM is currently in an administration proceeding.  In this type of a proceeding, an administrator appointed over a company has control of the business, affairs and property and investigates and considers ways of salvaging the business or preserving the business for an eventual liquidation for the benefit of all of the company's stakeholders as a whole – being all of its creditors, shareholders, and employees.  Creditors must submit proofs of debt to support their claims.  VCM's insolvency proceeding is no exception.  In particular, I draw attention to the following:

(a) The objective of the voluntary administration procedure is to ensure the continuation of VCM's business as a going concern to yield a better return to the company's stakeholders than would result from an immediate winding up. Section 213 of the Insolvency Act.

(b) An administrator may carry on the company's business and manage its property and affairs with the objective of salvaging protecting its business in the interests of the company's stakeholders. Section 222(1)(c) of the

9

    Insolvency Act.

(c) An administrator is required to investigate the company's affairs and consider possible ways of salvaging its business in the interests of creditors, employees, and shareholders. Section 222(1)(b) of the Insolvency Act.

(d) In the case of VCM, the Mauritius Liquidator is currently acting as an administrator to preserve the company's assets, but will eventually liquidate VCM.

(e) Any of the company's creditors or shareholders may apply to the court if the administrator appointed manages the company's property or affairs so as to prejudice the interests of some or all of the company's creditors or shareholders. Section 283 of the Insolvency Act.

(f) A key effect of administration, however, is the operation of a moratorium. Unless the administrator consents in writing or the Mauritian Court gives permission:

  i. no person can enforce a charge over the property of the company;

  ii. an owner or lessor cannot take possession of or otherwise recover property that was used or occupied by, or is in the possession of, the company; and

  iii. proceedings in a court shall not be commenced or continued against the company. Sections 242 – 244 of the Insolvency Act.

(g) The administrator must call the following meetings of creditors:

  i. The first creditors' meeting for considering whether the administrator should be replaced and whether to appoint a committee of creditors. In the case of the Company, the first creditors' meeting was held on 04 May 2020 and no replacement administrator was proposed by the creditors;

  ii. A watershed meeting, at which one of the exit routes from administration has to be voted upon; and

  iii. Such other creditors' meetings as may be required by the creditors' committee or the administrator. Section 232 Insolvency Act.

30. The Mauritius Funds are in liquidation or winding-up proceedings. This type of proceeding, whether voluntary liquidation or winding up commenced by the Court, is also a

collective proceeding. In particular, I draw attention to the following:

    (a)    Section 154(1) of the Insolvency Act: with effect from the commencement of the liquidation of a company:

        i.    the liquidator has custody and control of the company's assets;

        ii.    the directors remain in office but cease to have powers, functions, or duties other than those required or permitted to be exercised by the Insolvency Act;

        iii.    unless the liquidator agrees or the Court orders otherwise, a person shall not commence or continue legal proceedings against the company or in relation to its property; or exercise or enforce, or continue to exercise or enforce, a right or remedy over or against the property of the company;

        iv.    unless the Court orders otherwise, a share in the company shall not be transferred;

        v.    an alteration shall not be made to the rights or liabilities of a shareholder of the company;

        vi.    a shareholder shall not exercise a power under the constitution of the company or the Insolvency Act except for the purposes of the Act;

        vii.    the constitution of the company shall not be altered;

    (b)    Section 154(1) shall not affect the right of a secured creditor, subject to the Fourth Schedule, to take possession of, and realise or otherwise deal with, property of the company over which that creditor has a charge;

    (c)    The liquidator shall pay, out of the money received by him by the realization of the property of a debtor, the preferential claims set out in the Fourth Schedule to the Insolvency Act to the extent and in the order of priority specified in that Schedule: section 328(1) of the Insolvency Act;

    (d)    After paying the preferential claims in accordance with subsection (1), the liquidator shall pay any remaining money to the general creditors in accordance with section 329: section 328(4) of the Insolvency Act;

    (e)    After paying the general creditors in accordance with section 328(4), the liquidator shall pay any remaining money to the debtor in accordance with section 330: section 328(5) of the Insolvency Act;

11

 (f) In the case of a company in winding up the liquidator, after paying the general creditors in accordance with subsection (4), shall distribute the company's surplus assets: (i) in accordance with the provisions of the company's constitution; or (ii) where the company's constitution does not contain provision for the distribution of surplus assets or the company does not have a constitution, to the shareholders rateably: section 328(6) of the Insolvency Act;

 (g) After paying preferential claims in accordance with section 328(1), the liquidator shall apply the money received by him by the realization of the property of the debtor, in satisfaction of all other claims: section 329(1) of the Insolvency Act;

 (h) The preferential claims referred to in section 329(1) rank equally among themselves and must be paid in full, unless the money is insufficient to meet them, in which case they abate in equal proportions, and interest shall be paid on such claims to the extent and in the manner provided for in section 310: section 329(2) of the Insolvency Act; and

 (i) After paying the claims referred to in section 329, the liquidator shall, subject to section 327, pay any surplus to the debtor.

31. The collective nature of liquidation proceedings was confirmed by the Supreme Court of Mauritius in **Peepul Capital Fund II LLC v VSoft Holdings LLC 2021 SCJ 52**:

> *"At this juncture it is apposite to quote the following passage, which was relied upon by Counsel for the petitioner, from the judgment of Lord Hoffmann in Wight v Eckhardt Marine GmbH [2003] UKPC 37 on what a winding up proceeding is –*
>
> *"26. This argument was skilfully deployed but their Lordships think that it is wrong. It is first necessary to remember that a winding up order is not the equivalent of a judgment against the company which converts the creditor's claim into something juridically different, like a judgment debt. Winding up is, as Brightman LJ said in In re Lines Bros Ltd [1983] Ch 1, 20, "a process of collective enforcement of debts". The creditor who petitions for a winding up is –"not engaged in proceedings to establish the company's ability or the quantum of the liability (although liability and quantum may be put in issue) but to enforce the liability." 27. The winding up leaves the debts of the creditors untouched. It only affects the way in which they can be enforced. When the order is made, ordinary proceedings against the company are stayed (although the stay can be enforced only against creditors subject to the personal jurisdiction of the court). The creditors are confined to a collective enforcement procedure that results in*

> *pari passu distribution of the company's assets. The winding up does not either create new substantive rights in the creditors or destroy the old ones. Their debts, if they are owing, remain debts throughout. They are discharged by the winding up only to the extent that they are paid out of dividends. But when the process of distribution is complete, there are no further assets against which they can be enforced. There is no equivalent of the discharge of a personal bankrupt which extinguishes his debts. When the company is dissolved, there is no longer an entity which the creditor can sue. But even then, discovery of an asset can result in the company being restored for the process to continue."*

**D.     Judicial Process by which Assets and Affairs of the Mauritius Debtors are Subject to Court Supervision**

32.     Mauritian administration proceedings are a judicial proceeding in which the company's assets and affairs are subject to control or supervision by the Court. The Mauritian Proceedings are typical in this regard and, I draw attention to the following:

(a)     The Court has supervisory authority in relation to an administrator's conduct and, upon the application of a creditor or shareholder of the company (amongst others), may make such order as it thinks appropriate if the administrator manages the company's assets or affairs so as to prejudice the company's creditors or shareholders or if they default in filing a return, account or other document or fail to give a notice as required by the Mauritius Act. Sections 283 and 284 of the Insolvency Act.

(b)     A transaction or dealing by the company or a person acting on its behalf that affects the company's property is void unless entered into by the Joint administrators or with their consent or else by order of the court. Section 226 of the Insolvency Act.

(c)     The court has exercised its authority in relation to the Mauritian Proceeding by extending certain time limits and by exempting the administrator from personal liability for rent and certain other obligations incurred by the Company.

33.     Liquidation proceedings are also judicial proceedings, as they (as well as the liquidator) are at all times subject to the supervisory jurisdiction of the Court. I draw attention in particular to the following:

(a)     In respect of winding up initiated by a Court order: The Court may, on the application of a liquidator, order a person who has failed to comply

    with a requirement of the liquidator under section 117 and 118 to comply with that requirement (section 121(1) of the Insolvency Act). A liquidator may apply to the Court for directions in relation to any particular matter arising in a winding up (section 121(2) of the Insolvency Act). It is also the Court who may issue an order that a liquidator be realised and the company dissolved, after the liquidator has realised and distributed assets (section 122(1) of the Insolvency Act);

(b) Any person aggrieved by any act or decision of the liquidator may appeal to the Court which may confirm, reverse, modify the act or decision complained of and make such order as it thinks fit: section 155(1) of the Insolvency Act;

(c) A liquidator, contributory or creditor may apply to the Court (i) to determine any question arising in the winding up of a company, or (ii) to exercise all or any of the powers which the Court might exercise if the company were being wound up by the Court: section 155(2) of the Insolvency Act;

(d) Where, in the course of the winding up of a company, it appears to the Court that a person who has taken part in the formation or promotion of the company, or a past or present director, manager, liquidator, administrator or receiver of the company, has misapplied or retained or become liable or accountable for money or property of the company, or been guilty of negligence, default or breach of duty or trust in relation to the company, the Court may on the application of the liquidator or a creditor or shareholder or the Director[2] –

  i. inquire into the conduct of the promoter, director, manager, liquidator, administrator or receiver; and

  ii. order that person –

   (a) to repay or restore the money or property or any part of it with interest at a rate the Court thinks just;

   (b) (B) to contribute such sum to the assets of the company by way of compensation as the Court thinks just; or

   (c) (C) where the application is made by a creditor, order that person to pay or transfer the money or property or any part of it with interest at a rate the Court thinks just to the creditor.

  Section 155(3) of the Insolvency Act;

---

[2] i.e. the Director of Insolvency

  (e)  Where a liquidator who has made default in lodging or making any application, return, account or other document or in giving any notice which he is required to lodge, make or give, fails to make good the default within 14 days after the service on him of a notice issued by the Registrar of Companies or the Official Receiver or the Director requiring him to do so, the Court may, on the application of a contributory or creditor of the company or the Official Receiver or the Registrar of Companies or the Director, make an order directing the liquidator to make good the default within such time as is specified in the order: section 160(1) of the Insolvency Act;

  (f)  The Court shall have regard to the conduct of every liquidator and, where a liquidator does not faithfully perform his duties and observe the requirements of the Court or where there is a failure to comply with a relevant duty, or where a complaint is made in that behalf to the Court by a creditor, contributory or committee of inspection, or by the Official Receiver or Registrar of Companies or the Director, the Court shall inquire into the matter and make such order as it thinks fit: Section 174(1) of the Insolvency Act;

  (g)  The Court also has powers to enforce or relieve a liquidator from compliance with a duty (section 175 of the Insolvency Act) and to make a prohibition order for a period not exceeding 5 years where a liquidator has persistently failed to comply with his duties (section 176 of the Insolvency Act).

**E. The Purpose of the Mauritius Proceedings is to Liquidate the Mauritius Debtors**

34. The liquidator plays a central role in all forms of winding up. His duties include taking control of the company's assets, realising them, distributing proceeds to creditors, and reporting any misconduct or offences. Creditors must prove their debts by submitting formal claims to participate in distributions. The process ends with the dissolution of the company once all matters are settled and statutory filings completed.

35. When a company is placed into liquidation, the Official Receiver or the appointed liquidator is responsible for realising the company's property and distributing the proceeds. The law requires that preferential claims, as listed in the Fourth Schedule of the Insolvency Act, are

settled first and in the order of priority prescribed. Once these have been paid, any remaining funds are distributed among the general creditors.

36. If, after payment of all creditors, there are surplus assets, these are distributed to the company's shareholders. The distribution is made either in accordance with the company's constitution, if it contains provisions to that effect, or, in the absence of such provisions, the assets are divided rateably among the shareholders. This ensures that creditors are satisfied before any return is made to shareholders.

**F.  The Mauritius Proceedings are Conducted Pursuant to a Law Relating to Insolvency**

37. A Mauritian Proceedings is conducted pursuant to the Mauritius Insolvency Act, which is the Mauritian law relating to insolvency. I note in particular that:

  (a)  The Mauritian Proceedings is being conducted pursuant to the Mauritius Insolvency Act; and

  (b)  The Mauritius Insolvency Act makes provision for the insolvency of natural and legal persons, in the case of the latter, by liquidation and reorganisation (amongst other procedures).

*[Remainder of page intentional left blank]*

Executed this 4th day of September in 2025,
Ebene, Mauritius

_____
Rajeshwar Bucktowonsing

**Orison Legal**
R. BUCKTOWONSING
SENIOR ATTORNEY / SOLICITOR

A : Level 2, Hennessy Court,
Corner Pope Hennessy &
Suffren Streets, Port Louis,
Republic of Mauritius

T : +230 208 7100 / + 230 208 5100
T : +230 212 0596
F : +230 210 3812