UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

---

| | |
|---|---|
| In re:   Venus Capital Management Company, et al. | Bk. No. 25-10709 |
|               Debtors in Foreign Proceeding | Chapter 15 |
| | |
| | (Jointly Administered) |
| | |
|            Venus Global Macro Fund, Ltd., et al. | Bk. No. 25-10713 |
|                  Debtors in a Foreign Proceeding | Chapter 15 |
| | |
| | (Jointly Administered) |

OPINION OF ORDER GRANTING RECOGNITION OF
FOREIGN MAIN PROCEEDINGS AND ADDITIONAL RELIEF

---

## I.      Introduction

In five simultaneously filed Chapter 15 cases, the Court considered whether to grant Petitions seeking recognition of foreign proceedings (the "Petitions") initiated in Mauritius and the British Virgin Islands ("BVI"). In doing so, the Court also considered the applicability of 11 U.S.C. § 109 in Chapter 15 cases.[1]

Three of the Chapter 15 cases involve proceedings based in Mauritius: *Venus Capital Management Company*, Bk. No. 25-10709; *Venus India Structured Finance Master Limited*, Bk. No. 25-10710; *Venus Master Fund*, Bk. No. 25-10711 (collectively the "Mauritius Debtors"). The other two involve proceedings based in the BVI: *Venus Global Macro Fund, Ltd*, Bk. No. 25-

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "chapter," and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub L. No. 109-8, 119 Stat. 37 ("BAPCPA").

10713; *Venus India Structured Finance (Offshore) Fund Limited*, Bk. No. 25-10714 (collectively the "BVI Debtors").[2]

On October 9, 2025, the Court held a hearing (the "Recognition Hearing") on the Petitions, during which time the Debtors' foreign Representatives and Debtors' Counsel appeared.[3] Having concluded that the Foreign Representatives of the Mauritius and BVI Proceedings satisfied all requirements of § 1517 and § 1515, the Court granted the Petitions and the additional relief requested by the Foreign Representatives, pursuant to § 1521.[4]

The following Opinion contains the Court's findings of fact and conclusions of law. Given the interconnected nature of the BVI and Mauritius Proceedings, as well as the parallels in the BVI and Mauritius Foreign Representatives' arguments, the following Opinion provides the reasoning behind the Orders granting all five Petitions.

**II.    Jurisdiction**

The Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under § 157(b)(2)(P).

**III.    Background**

A. <u>History and Corporate Structure of the Debtors</u>

Vikas Mehrotra ("Mehrotra") incorporated Venus Capital Management Company ("VCM") in 2010. *See* Bk. No. 25-10709, Doc. #4, Declaration of Bavesh Huns Biltoo ("Biltoo Decl.") ¶¶ 6, 10. VCM was set up to act as a Collective Investment Scheme ("CIS"). *Id.* ¶ 6. Mehrotra owned 100% of VCM's shares. *Id.* ¶ 10.

---

[2] The Mauritius Debtors and the BVI Debtors are collectively referred to as the "Debtors."
[3] The ongoing proceedings in Mauritius related to the Mauritius Debtors shall be referred to as the "Mauritius Proceedings." The ongoing proceedings in the BVI related to the BVI Debtors shall be referred to as the "BVI Proceedings."
[4] The Mauritius Debtors have been administratively joined under the lead case *Venus Capital Management Company, et al*, Bk No. 25-10709. The BVI Debtors have been administratively joined under the lead case *Venus Global Macro Fund, Ltd., et al*, Bk. No. 25-10713.

As the sole holder of the management shares (voting, non-participating), VCM is the sole voting member of two funds incorporated in the BVI, Venus Global Macro Fund, Ltd. ("BVI Macro Fund") and Venus India Structured Finance (Offshore) Fund Limited ("BVI India Fund"). *Id*. ¶ 11.

The BVI India Fund and BVI Macro Fund "operated as feeder funds in master-feeder-fund structures" with the Venus Master Fund (the "Mauritius Macro Fund") and the Venus India Structured Finance Master Limited ("Mauritius India Fund") acting as master funds. *Id*. The Mauritius Macro Fund served as the master fund for the BVI Macro Fund and the Mauritius India Fund served as the master fund for the BVI India Fund. *Id*.

In turn, the Mauritius Macro Fund and the BVI Macro Fund were formed to make profits through investments in listed securities in India. *Id*. ¶ 14. As an alternative to security investments, the Mauritius India Fund and the BVI India Fund provided a structure to invest in a non-banking financial company in which investors could participate in the market for secured and unsecured lending to Indian companies. *Id*. ¶ 15.

Mehrotra principally operated the investment activities of both the BVI and Mauritius Debtors. *Id*. ¶¶ 20, 22.

B.  Appointment of Liquidators and Commencement of Mauritius and BVI Proceedings

Mehrotra unexpectedly passed away in 2023. *Id*. ¶ 21. Mehrotra was so vital to VCM's operations that upon his death VCM's board of directors could no longer effectively manage the company or make strategic decisions on its behalf. *Id*. ¶ 22. After determining that the company could not function, VCM's directors began taking steps to put the appropriate entities into insolvency proceedings. *Id*. ¶ 24.

3

In November of 2024, VCM's directors formally appointed Huns Biltoo (the "Mauritius Foreign Representative" or the "Mauritius Liquidator") as Administrator of VCM pursuant to Section 215(6)(a) of the Mauritius Insolvency Act. *Id.* ¶ 26. In turn, the Mauritius Liquidator, executed shareholder resolutions to place the BVI Debtors into liquidation under Section 159(2) of the BVI Insolvency Act. *See* Bk. No. 25-10713, Doc. #4, Declaration of Russell Crumpler ("Crumpler Decl.") ¶ 26. From there, the Mauritius Foreign Representative appointed Russell Crumpler and Christopher Farmer (the "BVI Liquidators" or the "BVI Foreign Representatives") as joint liquidators. *Id*.

The Mauritius Liquidator and BVI Liquidators have represented to the Court that they are cooperating with each other to take control of their respective Debtors' investments, cash, and other assets to distribute them to the appropriate creditors and investors.

The Mauritius Liquidator has, *inter alia*: provided notice of his appointment to the Mauritius Revenue Authority, the Director of Insolvency, the office of the registered agent, all known stakeholders (creditors and contributories), professional advisors, the fund administrator and counterparties; advertised his appointment in two daily newspapers; retained counsel in Mauritius and the United States to seek Chapter 15 recognition of the Mauritius Proceedings; and, in the case of VCM, notified creditors of and held the first meeting of creditors. Biltoo Decl. ¶ 30.

The BVI Liquidators have, *inter alia*: provided notice to the BVI Financial Services Commission, the Registrar of Corporate Affairs, the office of the registered agent, all known stakeholders (creditors and contributories), professional advisors, the fund administrator and counterparties of their appointment; advertised their appointment; retained counsel in the BVI and the United States to seek Chapter 15 recognition of the BVI Proceedings; notified creditors of, and held, the first meeting of creditors; and issued a formal report to creditors. Crumpler Decl. ¶ 29.

The Mauritius Liquidator and BVI Liquidators have confirmed that they have control over the Mauritius and BVI Debtors, respectively, and that since their appointments, most of the work performed in relation to the Foreign Proceedings has been done in each Debtor's country of origin. *Id.* ¶¶ 35-36; Biltoo Decl. ¶¶ 35-36.

C. <u>Law Governing the Foreign Proceedings</u>

   i. Mauritius Law

Insolvency proceedings in Mauritius are governed by the Mauritius Insolvency Act and complemented by regulations contained in the Companies Act 2001. The Mauritius Insolvency Act was modeled on the equivalent legislation in New Zealand and "basically encompasses (i) bankruptcy for individuals, and (ii) voluntary or court liquidation, voluntary administration, and receivership for companies." *See* Bk. No. 25-10709, Doc. #5, Declaration of Rajeshwar Bucktowonsing ("Bucktowonsing Decl.") ¶ 10.

These proceedings are commenced by the act of appointing an administrator, here Mr. Biltoo. *Id.* ¶ 20. Pursuant to Section 154(1) of the Insolvency Act, any directors will remain in office but are unable to act as officers of the company without prior approval of the administrator. *Id.* ¶ 30(a). Unless otherwise authorized by the court, legal proceedings against the company are stayed. *Id.* ¶ 25.

The court supervising an insolvency in Mauritius has supervisory authority over an administrator's conduct and will issue orders when appropriate (for instance, if the administrator manages the company's assets or affairs in a way that prejudices creditors, or if the administrator fails to give notice as required by the Mauritius Insolvency Act). *See id.* ¶ 32. Any person may appeal decisions of the liquidator to the court. *Id.* ¶ 33(b). If a liquidator fails to comply with their duties the court has power to relieve them of their duties. *Id.* ¶ 33(g).

As part of their duties, a liquidator will take control of a company's assets, realize them, and distribute them. *Id.* ¶ 35. The funds must be distributed in the order of priority listed in the Fourth Schedule of the Insolvency Act. *Id.* After priority claimholders, general creditors are paid, and any surplus shall be distributed to the company's shareholders. *Id.* ¶¶ 35-36.

Once assets are distributed and statutory requirements are met, the process ends, and the company is dissolved. *Id.* ¶ 34.

    ii. BVI Law

The BVI proceedings are governed by the BVI Insolvency Act, Parts VI through XI, and the BVI Insolvency Rules. BVI insolvency proceedings can be commenced by either: (1) a qualifying resolution of the members of a company, or (2) an order of the BVI Court. *See* Bk. No. 25-10713, Doc. #5, Declaration of Daniel Mitchell ("Mitchell Decl.") ¶¶ 21-22. Once the liquidator is appointed, they take custody and control of a company's assets. *Id.* ¶ 25. Though the directors remain in office, they are only able to act as prescribed by the BVI Insolvency Act or as authorized by the liquidator. *Id.*

Even though the BVI Proceedings were not commenced by an order of the Commercial Division of the High Court of Justice, British Virgin Islands (the "BVI Court"), the BVI liquidators act as officers of the BVI Court and are supervised by the BVI Court. *Id.* ¶¶ 19, 28. Creditors and shareholders are treated on a *pari passu* basis and funds are distributed according to a priority scheme. *Id.* ¶ 31. Liquidators must submit reports and accounts to the BVI Court regarding their conduct in the liquidation and their investigation of the company's financial affairs. *Id.* ¶ 32. The BVI Court must approve the liquidators' renumeration. *Id.* ¶ 33.

D. <u>Initiation of Chapter 15 Cases and the Recognition Hearing on the Petitions</u>

The Debtors have initiated these cases for the primary purpose of staying actions against them and taking control of certain bank accounts located at Citizens Bank in Providence, R.I. (the "Bank Accounts").

At the Recognition Hearing, the Court obtained further information relative to the BVI and Mauritius Proceedings. The Court's primary focus was understanding the intricacies of Mauritius insolvency law, as recognition of foreign proceedings based in Mauritius pursuant to Chapter 15 of the Bankruptcy Code has not been previously taken up by a Bankruptcy Court. As such, the requests to recognize the Mauritius Proceedings is a matter of first impression.

Mr. Biltoo represented that the Mauritius Proceedings take place with the supervision of the Mauritius Court. If there are disputes regarding claims, all funds would be held pending the resolution of said disputes. Part of the discovery process is ranking claims, and if any of them need to be adjusted there is a fair process to do so based on the submitted proof of debts. In both Mauritius and BVI Proceedings, there is no claims bar date.

As of the time of the Recognition Hearing, Mr. Biltoo had not yet sold any assets or paid any liabilities. Mr. Biltoo has investigated assets in India and taken control of Mauritius assets. Since the BVI Debtors are shareholders of the Mauritius Debtors, Mr. Biltoo has had open communication with Mr. Crumpler and Mr. Farmer about the Mauritius process. They have represented that they intend to continue open communication to ensure the lawful distribution of all funds through the processes described above.

Notably, if there are any disputes between representatives of the BVI and Mauritius Proceedings, Mr. Crumpler indicated that the parties could turn to the Basic Guidelines for Communication and Cooperation between Courts in Cross-Border Insolvency Matters ("JIN

Protocol"). This protocol would enable all courts involved to communicate efficiently and effectively to resolve any disputes.

IV. **Venue**

Section 1410(1) of Title 28 of the United States Code ("Section 1410(1)") provides that venue in cases ancillary to foreign proceedings is proper in the district court in which the debtor has its principal place of business or principal assets in the United States.

The Debtors claim their principal assets are the Bank Accounts and an ownership interest in a retainer on deposit in an Akerman LLP trust account in Rhode Island. To demonstrate that this is sufficient for venue under Section 1410(1), the Debtors look to courts that have found that deposits in a bank account and an attorney retainer on deposit, either together or on their own, provide sufficient basis for venue. Bk No. 25-10709 (Doc. #3), ¶ 4 (citing *In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016)).

In the absence of binding authority, this Court is persuaded by several Second Circuit cases which have found that retainer accounts provide a sufficient basis to fulfill Section 1410(1)'s requirements. *See In re B.C.I. Finances Pty Ltd.*, 583 B.R. 288, 294 (Bankr. S.D.N.Y. 2018) (collecting cases concluding that venue for Chapter 15 cases can be found where principal assets consist of retainer accounts alone).

The fact that the retainer accounts can independently satisfy Section 1410(1) is key because the Debtors were unable to clearly demonstrate whether or which Debtors have an interest in the Bank Accounts. Accordingly, venue is proper under Section 1410(1).

V. **Eligibility to be a Debtor**

Section 109 establishes general eligibility criteria for debtors: "[n]otwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or

property in the United States, or a municipality, may be a debtor under [the Bankruptcy Code]." 11 U.S.C. § 109(a). Courts are split on whether this section should apply to Chapter 15 debtors. *See* 8 COLLIER ON BANKRUPTCY ¶ 1501.03 [3] (Richard Levin & Henry J. Sommer eds., 16th ed.).

There are two approaches: (1) the Second Circuit approach, finding that the plain meaning of § 109 makes clear that it applies to *all* chapters of the Bankruptcy Code; and (2) the "alternative approach," currently followed by Eleventh Circuit, finding that § 109 should not apply to Chapter 15 debtors. *Id.*

The Court of Appeals for the Second Circuit lays out its approach in *Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*. *See* 737 F.3d 238 (2nd Cir. 2013). *Barnet* first looks to § 103(a), which "provides that, other than for an exception not relevant here, Chapter 1 'of this title . . . appl[ies] in a case under Chapter 15.'" *Id*. at 247. To counter arguments asserting that Chapter 15 debtors need only meet the definition of "debtor" under § 1502 to prove their eligibility, *Barnet* explains that the purpose of § 109 is not to define but to qualify what kind of "person" may be a debtor. *See id*. at 249. In turn, the term "debtor" is defined, as opposed to qualified, in § 101(13) and § 1502. *See id*. The *Barnet* court found that this "linguistic parallelism" makes clear that § 1502 replaces the definition found in § 101(13) but does not supplant § 109, as § 1502 does not provide additional eligibility requirements. *See id*. Simply put, the court found that there is nothing in Chapter 15 overriding § 103(a)'s explicit instruction that Chapter 1 should apply to Chapter 15. *See id*.

Courts following the alternative approach find that the Second Circuit misconstrued Chapter 15's requirements. *See* 8 COLLIER ON BANKRUPTCY ¶ 1501.03 [3]. The Court in *Al Zawawi* observed that, per § 1517(a), there are "just three conditions for recognition, none of which involve an assessment of the foreign debtor's contacts with the United States." *In re Al Zawawi*,

9

637 B.R. 663, 667 (Bankr. M.D. Fla. 2022), aff'd, 97 F.4th 1244 (11th Cir. 2024) (citing 11 U.S.C. § 1517(a)). The *Al Zawawi* court also looked at other sections of the Code indicating the inapplicability of § 109. *See id*. at 668. First, § 1528 provides that, after recognition of a foreign main proceeding, a debtor may only commence a case under another Chapter if said debtor has assets in the United States. *Id*. The *Al Zawawi* court questioned why there would be a need to clarify that assets were needed to commence a case under another Chapter if assets were required to commence a Chapter 15 case in the first place. *See id*.

*Al Zawawi* also pointed out that Section 1410(2) and (3) of Title 28 of the United States Code would be meaningless if property in the United States was required to commence a Chapter 15 case. *Id.* at 669. Absent holding property in the United States, venue is proper in the district court in which there is pending against the debtor an action or proceeding in a Federal or State court and Section1410(3) requires only that "venue will be consistent with the interests of justice and the convenience of the parties." *Id.* (quoting 28 U.S.C. §1410(2)).

In turn, COLLIER ON BANKRUPTCY advocates for the alternative approach, explicitly stating that "[w]hile Chapter 1 of the Bankruptcy Code applies in Chapter 15 cases by § 103, the § 109(a) criteria should apply only to cases under Chapters 7, 11, 12 and 13." 8 COLLIER ON BANKRUPTCY ¶ 1501.03[3]. Still, courts outside of the Second Circuit are split in adopting the Second Circuit approach. *See Jones v. APR Energy Holdings Ltd. (In re Forge Group Power Pty Ltd.)*, No. 17-02045, 2018 U.S. Dist. LEXIS 23660, at *32 (N.D. Cal. Feb. 12, 2018) (deeming COLLIER'S criticism of *Barne*t "unwarranted" and finding *Barnet's* reasoning persuasive).

This Court is persuaded by the reasoning in *Al Zawawi* and COLLIER. Though it might appear that the plain language of § 103 requires the application of § 109, such a reading would render § 1517, § 1528 and Section 1410 meaningless. In addition, the Court is persuaded that the

alternative approach is more consistent with Congress' intentions.[5] *See In re Al Zawawi*, 637 B.R. at 669. Therefore, this Court finds that Chapter 15 debtors do not have to meet § 109's eligibility requirements.[6]

### VI. Summary of Recognition Requirements Under § 1517

Section 1517(a) provides that:

> (a) Subject to § 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if--
> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of § 1502;
> (2) the foreign representative applying for recognition is a person or body; and
> (3) the petition meets the requirements of § 1515.

11 U.S.C. § 1517(a).

The foreign proceeding and the foreign representative must also meet the definitional requirements set out in § 101(23) and § 101(24).[7] *See* 8 COLLIER ON BANKRUPTCY ¶ 1517.01; 11 U.S.C. § 101(23) and § 101(24).

   a. <u>Section 1515 Requirements</u>

To initiate the Chapter 15 process a foreign representative files a petition for recognition. 11 U.S.C. § 1515(a). This petition must be accompanied by:

> (1) a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

---

[5] "The relevant House Report plainly states that '[t]he requirements of [§ 1517] . . .are all that must be fulfilled to attain recognition.'" *In re Al Zawawi*, 637 B.R. at 669 (quoting H.R. Rep. No. 109–31, pt. 1, at 113).
[6] Even if this Court were inclined to adopt the Second Circuit approach, the Debtors would meet the eligibility requirements of § 109 through ownership of the retainer accounts. *See In re B.C.I. Finances Pty Ltd.*, 583 B.R. at 293 ("[I]t is well established that '[a] debtor's funds held in a retainer account in the possession of counsel to a foreign representative constitute property of the debtor in the United States and satisfy the eligibility requirements of section 109.") (quoting *In re Poymanov*, 571 B.R. 24, 29 (Bankr. S.D.N.Y. 2017)).
[7] Section 1516(a) provides that "[i]f the decision or certificate referred to in § 1515(b) indicates that the foreign proceeding is a foreign proceeding and that the person or body is a foreign representative, the court is entitled to so presume." 11 U.S.C. § 1516(a).

11

> (2) a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or
>
> (3) in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

11 U.S.C. § 1515(b).

The Court finds that the certified copy of written resolutions to liquidate the Debtors and appoint Mr. Biltoo, Mr. Crumpler, and Mr. Farmer as liquidators are sufficient to satisfy § 1515(a)(1). *See* Bk. No.25-10709, Doc. #4; Bk. No. 25-10713, Doc. #4.

   b. The Foreign Proceedings

      i. As Defined Under § 101(23)

The Code defines "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23). Courts have broken this definition down into seven elements:

> (i) a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation.

*In re ABC Learning Centres Ltd.*, 728 F.3d 301, 308 (3d Cir. 2013).

*1. The Mauritius Debtors*

As explained above, to date, no proceeding under the Mauritius Insolvency Act has been recognized as a "foreign proceeding" under Chapter 15. In turn, the Court endeavored to determine whether the Mauritius Proceedings fit the Code's definition of "foreign proceeding."

First the Mauritius Debtors must establish that the proceeding is "judicial or administrative" in character. There are many qualifying "administrative" aspects to the Mauritius Proceedings, including the requirements that the administrator provide notice of the proceeding, request proofs of debts, and the submission and categorization of such proofs of debt. *See In re Betcorp Ltd.*, 400 B.R. 266, 280 (Bankr. D. Nev. 2009).

A proceeding under the Mauritius Insolvency Act may commence by the act of appointing an administrator, without the need of a court order. Also, the Mauritius court does not supervise the entire liquidation process. However, complete court supervision of a proceeding is not required for it to meet § 101(23)'s requirements. *See In re Betcorp Ltd.*, 400 B.R. at 280; Guide to Enactment of the UNCITRAL Model Law on Cross–Border Insolvency, U.N. Gen. Ass., UNCITRAL 30th Sess., U.N. Doc. A/CN.9/442 (1997) (the "UNCITRAL Guide") ¶74. It is sufficient that, under the Mauritius Insolvency Act, there is recourse for claimholders to appeal administrator's decisions to the court, and that the court will issue orders when appropriate. *See In re Betcorp Ltd.*, 400 B.R. at 280. The Mauritius Court can also remove an administrator who fails to comply with their duties. Bucktowonsing Decl. ¶33(g). This Court is therefore satisfied that the character of the Mauritius Proceedings are sufficiently "judicial or administrative" in nature pursuant to § 101(23)'s requirements.

To determine whether the proceedings are "collective," courts should look to whether they "consider[] the rights and obligations of all creditors." *In re Betcorp Ltd.*, 400 B.R. at 281. "A

13

collective proceeding 'must be instituted for the benefit of creditors generally rather than for a single creditor or class of creditors.'" *In re PT Bakrie Telecom Tbk*, 628 B.R. 859, 873 (Bankr. S.D.N.Y. 2021) (quoting *In re British Am. Ins. Co.*, 425 B.R. 884, 902 (Bankr. S.D. Fla. 2010)). Courts will decline to find a proceeding collective when it is "more akin to a[n] individual creditor's replevin or repossession action than it is to a reorganization or liquidation by an independent trustee." *In re Gold & Honey, Ltd.*, 410 B.R. 357, 370 (Bankr. E.D.N.Y. 2009).

Importantly, the Mauritius Insolvency Act requires that proofs of debt be submitted and that the assets of the liquidating entity be distributed according to a priority scheme. Bucktowonsing Decl. ¶¶26-27. If creditors have objections, they may appeal to the Mauritius Court. *Id*. ¶33. The Court is therefore satisfied that these proceedings are sufficiently "collective."

The Mauritius Proceedings are in a foreign country, satisfying element (iv). *See* 11 U.S.C. § 101(23); *In re ABC Learning Centres Ltd.*, 728 F.3d at 307-08. Element (v) is also satisfied because the Mauritius Insolvency Act provides a unified structure under which an entity might liquidate their assets in a unified and lawful manner. *See In re Betcorp Ltd.*, 400 B.R. at 282.

The Court is also satisfied that the provisions of the Mauritius Insolvency Act allowing for the removal of a liquidator "on good cause shown" and the ability of creditors to object to unfair treatment are enough to meet element (vi). *See id.* at 284; Mauritius Insolvency Act Sections 283, 284, 226, 108(8). The Mauritius Liquidator has also demonstrated that the purpose of the proceedings is to liquidate the assets of the Mauritius Debtors, satisfying element (vii).[8] *See id*. at 284-85.

---

[8] It is well established that BVI proceedings have been routinely recognized as "foreign proceedings" under Chapter 15. *See e.g. In re 1MDB Energy Holdings Ltd.*, Bk. No. 24-11469 (Bankr. S.D. Fla. 2024); *In re TZG Capital Ltd.*, Bk. No. 21-11152 (Bankr. S.D.N.Y. 2021); *Rongxingda Development BVI Ltd.*, Bk. No. 22-10175 (Bankr. S.D.N.Y. 2022); *Limora Investments Ltd.*, Bk. No. 19-11678 (Bankr. S.D.N.Y. 2019).

        ii. COMI Under § 1502(4) and the § 1516(c) Presumption

A "foreign main proceeding" is a foreign proceeding pending "where the debtor has the center of its main interests" ("COMI"). *See* 11 U.S.C. § 1502(4).

Section 1516(c) provides that "[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). The "[r]egistered office here refers to the place of [the debtor's] incorporation." *See* 8 COLLIER ON BANKRUPTCY ¶ 1516.03. The Petitions attach written resolutions which indicate that the Mauritius Debtors and BVI Debtors are incorporated under the laws of Mauritius and BVI, respectively. *See* Bk. No. 25-10709, Doc. #4, Ex. C; Bk. No. 25-10713, Doc. #4, Ex. C.

It is worth noting that the Mehrotra Children's Irrevocable Trust and Vikas Mehrotra Family Irrevocable Trust (collectively, the "Trusts") initially filed an objection to the BVI Debtors' Petitions. Bk. No. 25-10713, Doc. #25 (the "Objection"). In the Objection, the Trusts introduced arguments raising questions as to the COMI of the BVI proceedings. The Trusts argued that, up until Mehrotra's death, much of the decision making and business activities of the BVI Debtors had been done in the United States, Mehrotra's country of residence. These arguments, if valid, would call into question the COMI of the Debtors.

At the hearing, the Trusts confirmed that the Objection was resolved and that the Petitions were no longer contested. With the Objection resolved, the Debtors' COMI is no longer in dispute. Thus, the Court finds that the presumption has been met for both Debtors.

Even if the Debtors' COMI was still at issue, this Court agrees with the majority view that "court[s] should examine a debtor's COMI at the time [of] the Chapter 15 petition" filing. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 133 (2d Cir. 2013).

In turn, the record in this matter is well-established that at the time of the filing of the Petitions, almost all activity of the BVI Debtors was occurring in the BVI, and the same for the Mauritius Debtors. Therefore, even if the presumption had not been met, COMI would be proper for both the BVI and Mauritius Debtors.

    c. <u>The Foreign Representatives</u>

The Code defines a "foreign representative" as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). The key inquiry here is whether Mr. Biltoo, Mr. Crumpler, and Mr. Farmer have been appointed in a qualifying foreign proceeding. *See In re Tradex Swiss AG*, 384 B.R. 34, 41 (2008). As established herein, the foreign proceedings meet the requisite requirements, and the appointment of all foreign liquidators is evidenced by the respective liquidation resolutions of the Mauritius and BVI Proceedings. *See* Bk. No.25-10709, Doc. #4, Ex. A; Bk. No. 25-10713, Doc. #4, Ex. A. Therefore, the Court concludes that Mr. Biltoo, Mr. Crumpler, and Mr. Farmer are qualifying "foreign representatives."

**VII. Section 1506 Concerns**

Section 1506 provides that "[n]othing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.

This exception has been narrowly interpreted among countries following the Model Law on Cross-Brder Insolvency, which is adopted in its entirety by § 1506. *See In re Fairfield Sentry Ltd.*, 714 F.3d at 139. "The word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States." *Id*. (citing the UNCITRAL

16

Guide) ¶ 89. After a thorough examination of both the Mauritius and BVI Proceedings, the Court does not see any reason why § 1506 should preclude recognition.

### VIII. Post-Recognition Relief

Once an order recognizing a foreign main proceeding enters, § 1520 makes § 362's automatic stay applicable to the Chapter 15 debtor, effectively staying any actions against property of the debtor within the United States. *See In re Markus*, 610 B.R. 64, 75 (Bankr. S.D.N.Y. 2019), aff'd, 620 B.R. 31 (S.D.N.Y. 2020).

> Section 1520(a) also applies sections 363, 549 and 552 of the Code to any transfer of a debtor's interest in property within the United States; it allows a foreign representative to operate a debtor's business by exercising the rights and powers of a trustee under sections 363 and 552; and it applies section 552 to property of the debtor that is within the territorial jurisdiction of the United States.

*Id*. at 75-76. Therefore, upon the entry of the Orders Granting Recognition of Foreign Proceedings, the automatic stay took effect.

The Court has also granted discretionary relief under §1521(a) to assist the foreign representatives in their goal of taking control of the Bank Accounts and properly distributing their contents. *See* 11 U.S.C. § 1521(a) (outlining relief that may be granted upon recognition).

### IX. Conclusion

For the aforementioned reasons, the Petitions are **GRANTED.**

Date: March 2, 2026

John A. Dorsey, Jr.
Chief Bankruptcy Judge